640 So.2d 794 (1994)
Sheri Wilson WALKER, etc., Plaintiff-Appellant,
v.
AMERICAN HONDA MOTOR COMPANY, INC., Defendant-Appellee.
No. 93-1659.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1994.
Jack Forsythe Owens Jr., Harrisonburg, for Sheri Wilson Walker etc.
DeWitt T. Methvin Jr., Alexandria, for American Honda Motor Co., Inc. et al.
James Berry Reichman, Alexandria, for State Farm Ins.
Before KNOLL, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
Plaintiff-appellant, Sheri Wilson Walker, the natural tutrix of the minor child, Leamon Wilson, appeals a judgment in favor of defendant-appellee, State Farm Fire and Casualty Company, for her son's damages resulting from a collision of a four-wheel all terrain vehicle being operated by Leamon.
The jury determined that Leamon's father, Lemuel, (who was exercising his visitation rights with Leamon at the time of the accident) was 70% at fault and Leamon's aunt and uncle, Marion and Johnnie Wilson, were 30% at fault in causing the accident and the harm. It awarded $20,000.00 to the child's *795 mother on behalf of her son. The trial court judgment determined that State Farm, the Wilsons' insurer, was liable for 50% of the original damage award pursuant to La.Civ. Code art. 2324(B).[1] It rejected Ms. Walker's position that section (A) of that statute applied. It reasoned that the agreement of the adult defendants to allow the child to ride the all terrain vehicle did not amount to a conspiracy to commit an intentional act.
The trial judge was correct. We affirm.

ISSUE
The only issue on appeal is whether the trial judge erred in applying La.Civ.Code art. 2324(B) as opposed to La.Civ.Code art. 2324(A).

FACTS
Leamon's father, Lemuel, asked his aunt and uncle, the Wilsons, if their daughter, Raven, could play with his son on the four-wheeler. Johnnie, Lemuel's aunt, gave Raven permission to take the four-wheeler to Lemuel's parents' house. Apparently, both parents allowed the children to ride double on the four-wheeler.
While under Lemuel's supervision, the children switched drivers with Leamon driving the four-wheeler instead of Raven. The accident occurred when Leamon, while driving the four-wheeler, ran into the side of his grandparents' house. As a result of the accident, Leamon sustained trauma to his head and abdomen, contusion to his liver, retro peritoneal hematoma to his left kidney as well as bruises and contusions.

LAW AND DISCUSSION
We find the learned trial judge's reasons for judgment to be legally sound and logically articulated. We incorporate them into this opinion and adopt them as our own:
"In this case, the Court is asked to decide whether State Farm Fire & Casualty Insurance Company should be cast in judgment for ten thousand ($10,000.00) or twenty thousand ($20,000.00) dollars.
The decision of the Court hinges on the interpretation of the words: `He who conspires with another person to commit an intentional and willful act ...' found in LA.C.C. Art. 2324. Plaintiff claims the words should be construed to mean an agreement between two people to do a certain thing regardless of the outcome or result of that act. The defendants claim the words mean the conspirators or the actors intended the outcome or result of their acts.
The facts are clear. Defendant [sic], Johnny [sic] Lee Wilson and Leamon [sic] (should be Lemuel) Wilson agreed to allow and did allow their two five year old children to ride on a four-wheel vehicle. The act of allowing the children to ride was negligence on the part of both Johnny [sic] Lee Wilson and Leamon [sic] (should be Lemuel) Wilson. That negligence was a cause in fact of the plaintiff's damages. *796 Johnny [sic] Lee Wilson was thirty percent (30%) at fault and Leamon [sic] (should be Lemuel) Wilson was seventy percent (70%) at fault. The total damages were twenty thousand dollars ($20,000.00).
The term conspiracy generally means a plan by two or more persons to accomplish to [sic] some unlawful, immoral, criminal or evil purpose. Black's Law Dictionary, 5th Edition, 1979, defines conspiracy as follows:
`A combination or confederacy between two or more persons formed for the purpose of committing, by their very joint efforts, some unlawful or criminal act, or some act which is lawful in itself, but becomes unlawful when done by the concerted action of the conspirators, or for the purpose of using criminal or unlawful means to the commission of an act not in itself unlawful.'
In determining the meaning of conspiracy, one must look to its usage in the sentence in question. In this case `conspiracy' is used with the words `intentional or willful act.' The words `willful' and `intentional' must therefore be analyzed.
The generally prevailing meaning of the term `an intentional act' is an act wherein the person who acts either consciously desires the physical results of his act, or knows the result of his act is substantially certain to follow from his conduct whatever his desire may be as to that result. Bazley v. Tortorich, 397 So.2d 475 (La.1981) [sic] The word `intent' for the purposes of tort law and exclusionary clauses in insurance policies connotes that the actor desires to cause the consequences of his act or believes that the consequences of his act are substantially certain to result. Preston v. Granger, 517 So.2d 1125 (5th Cir.1987) [sic] Thus, intent has reference to the consequences of an act rather than the act itself. Only where the actor entertains a desire to bring about the consequences that followed or when the actor believed that the result was substantially certain to follow has an act been characterized as intentional. White v. Monsanto, 585 So.2d 1205 (La.1991) [sic]
The term `willful' has generally been given the same meaning in the law as intentionali.e., that the result which occurred was intended by the actor. Peacocks, Inc. v. South Central Bell, 445 [siccorrect cite is 455] So.2d 694 (2nd Cir.1984); Johnson v. Chicago Mill & Lumber Company, 385 So.2d 878 (2nd Cir. 1980) [sic] Willful has been defined by the Courts of Louisiana to be a term that necessarily involves some type of conscious design to injure or as a term that essentially carries the same meaning as the term `intentional.' Rushing v. State, 381 So.2d 1250 (1st Cir.1980); LaCroix v. State, Through Dept. of Transportation, 477 So.2d 1246 (3rd Cir.1985) [sic] Willfulness cannot exist without purpose or design. State v. Vinzant, 7 So.2d 917 (La. 1942); Peacocks, Inc. v. South Central Bell, Supra.

In this case Johnny [sic] Lee Wilson and Leamon [sic] (should be Lemuel) Wilson agreed to allow their small children to ride a four-wheeler. The desired result or consequence of their actions was not that the children be injured but that they have an enjoyable playtime. They certainly did not intend for the children to have an accident. Under the generally prevailing meaning of the terms "conspire, intentional and willful' it is clear that La.C.C. Art. 2324(A) does not apply in the instant case. That article envisions a situation wherein two or more people conspire or form an agreement to do an act where they consciously desire the physical result of the act to happen, or that they know the result of their act is substantially certain to follow their conduct.
Counsel for petitioner is commended for his ingenuity and cleverness in this matter. He also asserts the word `unlawful' was used in the pre-1987 Article 2324 and since the term `unlawful' was used in the pre-1987 amendment to Article 2324, the Legislature intended to change the meaning of the statute. A review of the language used in the statute clearly shows that was not the case. Article 2324(A) applies only to intentional torts in this case.
In that regard, it is the decision of this Court that Article 2324(B) shall apply, and *797 defendant shall be bound only for fifty percent (50%) of the judgment or total damages awarded of ten thousand dollars ($10,000.00)."
Ms. Walker argues that the trial judge's treatment of the term "conspiracy" was inadequate. We disagree. Black's Law Dictionary, 5th Edition (1983) defines a "civil conspiracy" as "a combination of two or more persons who, by concerted action, seek to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful..." The 4th Edition states, "... carrying out the design of the conspirators, overt acts are done causing legal damage, the person injured has a right of action. It is said that the gist of civil conspiracy is the injury or damage." Thus, it is clear to this court that the agreement between the actors involved in a conspiracy must be an agreement as to the intended outcome or result of their acts.
Ms. Walker further argues that the judge's analysis was unacceptable because it used cases decided before the 1987 amendment to article 2324 to define "intentional and willful act." We disagree. The importance of the cited cases was to give the jurisprudential definitions of the words "intentional" and "willful." The cases, quoting from Bazley, supra, since the amendment of Article 2324, which define "intentional act" are legion. Thus, the fact that the trial judge used the seminal supreme court case decided in 1981, is immaterial. Although White v. Monsanto, 585 So.2d 1205 (La.1991) had nothing to do with the interpretation of La.Civ.Code art. 2324, it did interpret the meaning of intent. This court has already decided in LaCroix, supra, that the term "willful" is basically synonymous with "intentional." Furthermore, as our brethren of the second circuit held in National Union Fire Insurance Co. of Pennsylvania v. Spillars, 552 So.2d 627 (La.App. 2d Cir.1989), writ denied, 556 So.2d 61 (1990), the 1987 amendment to Article 2324 merely rephrased the Article in terms of conspiracy, conformably to the jurisprudence.
For the foregoing reasons, the judgment of the trial court is affirmed. Plaintiff-appellant, Sheri Wilson Walker, is charged with costs of this appeal.
AFFIRMED.
NOTES
[1] La.Civ.Code art. 2324 reads as follows:

Art. 2324. Liability or solidary or joint and divisible obligation
A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages; however, when the amount of recovery has been reduced in accordance with the preceding Article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed. Under the provisions of this Article, all parties shall enjoy their respective rights of indemnity and contribution. Except as described in Paragraph A of this Article, or as otherwise provided by law, and hereinabove, the liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, or immunity by statute or otherwise.
C. Interruption of prescription against one joint tortfeasor, whether the obligation is considered joint and divisible or solidary, is effective against all joint tortfeasors. Nothing in this Subsection shall be construed to affect in any manner the application of the provisions of R.S. 40:1299.41(G).