697 So.2d 676 (1997)
Bobby G. HALL, et ux., Plaintiffs-Appellants,
v.
Roy M. LILLY, III, et al., Defendants-Appellees.
No. 29624-CA.
Court of Appeal of Louisiana, Second Circuit.
June 18, 1997.
*677 Hatch & Smith by James R. Hatch, Homer, for Plaintiff-Appellant.
Roy M. Lilly, Jr., Minden, for Defendant-Appellee.
Kitchens, Benton, Kitchens & Warren by Paul E. Kitchens, Minden, for Third Party Defendant-Appellant.
Before MARVIN, C.J., and NORRIS and WILLIAMS, JJ.
NORRIS, Judge.
The original plaintiffs, Bobby and Rochelle Hall, and one of the original defendants, Susan Hall Johnson, appeal a judgment holding them liable in solido for a civil conspiracy to deprive Ms. Johnson's former husband, Roy Lilly Jr., of his interest in the community home, and awarding Mr. Lilly $12,500 damages. Finding the evidence insufficient to support the award, we reverse.

Factual background
This case is the trial on remand of Hall v. Lilly, 27,891 (La.App.2d Cir. 1/24/96), 666 So.2d 1328, but we will briefly restate the facts.
While they were married, Ms. Johnson and Mr. Lilly borrowed $60,000 from Johnson's parents, the Halls, to finance the construction of a new home. Johnson and Lilly executed a promissory note for $36,000 in favor of the Halls; this note is secured by a mortgage. Johnson alone executed another note for $24,000, also in favor of the Halls, in September 1988. Johnson and Lilly both testified that Johnson handled the couple's finances and wrote checks for payment of the notes, a total of $333 a month. However, they separated in mid-1991 and Johnson failed to make the July 1991 payment.
The Halls filed this suit against Lilly and Johnson in March 1992 to collect the unpaid balance and recognize the mortgage. Lilly reconvened against the Halls and filed a third party demand against Johnson, advancing various claims, including one that Johnson and her parents conspired to cause suit to be filed and thus deprive him of his interest in the community home. After trial in August 1994, the District Court rendered judgment in favor of the Halls on their principal demands and rejected all of Lilly's incidental demands.
On appeal this court affirmed most of the judgment but found that the District Court had not addressed Lilly's civil conspiracy claim. We summarized the relevant evidence as follows:
Lilly testified that after the separation, he paid $700.00 to Johnson each month for "child support," and that she agreed to make the loan payments. Lilly further testified that he * * * did not know that Johnson had stopped making payments for the $36,000 note. Lilly's mother testified *678 that Johnson had informed her that the Halls told Johnson to stop making the loan payments. Johnson denied making that statement. Johnson acknowledged receiving a monthly payment * * * from Lilly. Johnson also testified that although she stopped making the loan payments because she did not have enough money, she never informed Lilly that she was not paying the loan.
27,891 at p. 5, 666 So.2d at 1332.[1]
We therefore remanded the case for an evidentiary hearing limited to the issue of collusion.
The District Court conducted this hearing in June 1996, with the transcript of the prior hearing in evidence. Johnson testified that during their marriage, she paid all the bills, including the house note to her parents; when she and Lilly separated, he gave her $700 a month from which she intended to continue paying the house notes; however, when the July 1991 payment came due, she did not have enough money, so she did not make that or any subsequent house payments. She testified that her father "understood" she had less money then, but he "mentioned" to her that if she failed to pay, he would have to foreclose. She denied that she participated in the foreclosure proceedings, or that she was supposed to get the house if her father foreclosed. She admitted that even though she and Lilly were in constant communication between the time of their separation and the Halls' suit, she never told him she had quit making house payments or that her father was threatening to foreclose; she felt that telling him this would only add to the turmoil of the situation.
She admitted, however, discussing with her father that if he bought the house at Sheriff Sale, she could possibly buy it back from him and make monthly payments in an amount not yet determined. R.p. 52.
Mr. Hall testified that he assumed Lilly knew the notes were behind; Johnson never told him otherwise. He denied that he ever advised his daughter not to pay; in fact, he told her the debt would have to be paid even though she asked him not to foreclose. Mrs. Hall also denied discussing the mortgage and foreclosure with Johnson and Lilly.
Lilly testified that after he and Johnson separated, they agreed that she would keep the house, and she told him on two subsequent occasions that she was indeed paying the notes. He had no idea of the arrearage until he was served with the Halls' suit. He admitted that under the terms of the notes, the holder could call in the balance on 90 days' notice, even if the debtor was current; however, had Johnson advised him she was unable to make payments, or had the Halls advised him of her failure to pay, he could have secured alternative financing within the 90-day period and avoided court costs and attorney fees.
The District Court found that "the Halls and Johnson did, in fact, conspire to foreclose on the house, adding attorney's fees and court costs to the debt in an attempt to deprive Lilly of his interest in a community asset. * * * There is no precise method to measure Lilly's damage, but the Court finds an award of $12,500 would adequately compensate Lilly for the damages he suffered." Judgment was rendered accordingly. The Halls and Johnson have appealed separately. Lilly has answered the appeal, seeking additional damages.

Applicable law
The Civil Code provides:
He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
La. C.C. art. 2324 A.
The term "conspiracy" generally means a plan by two or more persons to accomplish some unlawful, immoral, criminal or evil purpose. Walker v. American Honda Motor Co., 93-1659 (La.App. 3d Cir. 6/1/94), 640 So.2d 794, writ denied 94-1741 (La.10/7/94), 644 So.2d 644; Junior Money Bags Ltd. v. Segal, 798 F.Supp. 375 (E.D.La. 1990), aff'd 970 F.2d 1 (5th Cir.1992). The *679 actionable element of the conspiracy claim is not the conspiracy itself, but rather the tortious, criminal, immoral or evil purpose which the conspirators agreed to perpetrate and actually committed in whole or part. Silver v. Nelson, 610 F.Supp. 505 (E.D.La.1985), and citations therein; Junior Money Bags v. Segal, supra.
The burden of proof in a claim of fraud is a preponderance of the evidence. La. C.C. art. 1957; Acadian Production Corp. v. McKendrick, 223 La. 79, 64 So.2d 850 (1953). A conspiracy may be proved by circumstantial evidence. Silver v. Nelson, supra; Pizzolato v. Perez, 524 F.Supp. 914 (E.D.La.1981). The plaintiff must nevertheless prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury. Silver v. Nelson, supra.
Damages for fraud must be proved by a preponderance of the evidence. Ballard's Inc. v. North American Land Dev., 28,437 (La.App.2d Cir. 6/26/96), 677 So.2d 648; Haggerty v. March, 480 So.2d 1064 (La.App. 5th Cir.1985). The District Court has discretion to fix damages that are not susceptible to precise proof. La. C.C. art. 2324.1. In general, the District Court's factual findings cannot be disturbed unless they are plainly wrong or manifestly erroneous. Lewis v. State, 94-2370 (La.4/21/95), 654 So.2d 311.

Discussion
Both the Halls and Ms. Johnson urge that the evidence does not support a finding of a civil conspiracy. The only testimony suggesting a conspiracy was given by Lilly's mother, Mrs. Lillian Lilly. At the first trial, she testified as follows:
The day after I found out about the suit I knew that money was allocated for house payments. I called Susan, Mrs. Johnson, and asked her why she wasn't paying the house note. She said, "My daddy told me not to pay it."
On cross examination she added that she elicited this comment from Johnson by calling her at work, and it was not a "pleasant conversation"; in the same phone call, Johnson may have said that she begged her father not to sue.
We note that Mrs. Lilly's testimony was not offered to prove the truth of the assertion, but only to impeach Johnson. Thus we do not consider it evidence of a conspiracy. La. C.Ev. art. 607 D(2). Even if it were a relational admission and admissible as non-hearsay, La. C.Ev. art. 801 D(3)(b), the plaintiff could not use it to make a prima facie case of conspiracy, only to corroborate his prima facie case. State v. Matthews, 26,550 (La.App.2d Cir. 12/21/94), 649 So.2d 1022, writ denied 95-0435 (La.6/16/95), 655 So.2d 341.
Further, on remand Mrs. Lilly was not called to testify. Johnson testified but was not asked to affirm or deny saying this to Mrs. Lilly. Both Johnson and Mr. Hall denied that father instructed daughter not to pay the notes. We are constrained to find that the testimonial evidence of a conspiracy is too weak and unreliable to prove the plaintiff's allegations by a preponderance.
As for circumstantial evidence, Johnson normally balanced the couple's bank book and paid the bills before the separation. When they separated Lilly gave her $700 a month in "child support" and suggested that her parents would probably accept less on the house note; however, Johnson replied that she intended to pay the note because her parents needed their money. On several occasions Johnson asked for, and Lilly gave her, additional money to cover extraordinary expenses. There is no evidence that Mr. Hall was aware of Johnson's statement to Lilly that she intended to pay the house note.
Roughly one month after separation Johnson realized she would not have enough money to pay all her bills; however, despite regular contacts with and occasional extra support from Lilly, she never told him that she lacked cash for the house note and had stopped paying it. She admitted that after she remarried she and Mr. Johnson occasionally had large cash balances in their account, but she attributed these to Mr. Johnson's income and felt that the house note was not his debt.
Finally, Johnson stated that she and her father had discussed the possibility of her repurchasing the house if he bought it at *680 Sheriff Sale. Mr. Hall, however, did not mention this, and asserted his only purpose in bringing the suit was to get his money back.
While this evidence makes a case for Johnson's poor financial judgment, and perhaps for mismanagement of the property of the former community, we do not find that it preponderates to prove that she and the Halls agreed to deprive Lilly of his community interest. The principal evidence that alerted this court to the potential for a conspiracy  the testimony of Mrs. Lilly  was neither probative nor reliable, was not developed on remand, and was contradicted by all the parties to the alleged agreement. The totality of the evidence creates, at best, only a suspicion of conspiracy, given the filial bond between Johnson and Mr. Hall, the time she quit payments, and the date of the Halls' lawsuit. A mere suspicion does not prove fraud. Silver v. Nelson, supra. Moreover, Johnson's failure to pay the July 1991 installment can be equally explained as she did explain it: the predicament of a recently separated spouse and mother of three who discovers that her income is not sufficient to meet her needs.
In short, the record evidence does not make it more likely than not that Johnson and the Halls agreed to deprive Lilly of his property. This is fatal to the claim. Junior Money Bags v. Segal, supra; Silver v. Nelson, supra; Carter v. Brown, 55 So.2d 301 (La.App. 2d Cir.1951). The District Court was plainly wrong to find otherwise.
In our original opinion, we discussed the "object" of the Halls' suit in the context of abuse of process:
Here, the Halls loaned money and obtained promissory notes. The debtors stopped paying in 1991 and the following year the Halls filed suit on the defaulted notes. Whatever their motive, there is no evidence that they used the process to gain a result not proper under the law. The object of the Halls' suit was to gain recognition of the mortgage and collect a debt. There is nothing illegal about this object. 27,891 at p. 4, 666 So.2d at 1332.
On remand Lilly has amplified his claim that the Halls and Ms. Johnson had an ulterior motive to deprive him of his interest in the house. However, the evidence presented adds nothing to his claim that the Halls' suit to enforce their mortgage was illegal, tortious, immoral or evil. Without proof that a tort or other evil act was accomplished in whole or part, the judgment cannot be sustained. Junior Money Bags v. Segal, supra.
Moreover, even if Lilly had proved that Johnson and the Halls combined their efforts for an illegal purpose, there is no proof of his loss. The record does not disclose whether the Halls have executed their judgment or that the house has been sold at Sheriff Sale. There is inadequate evidence of the value of Lilly's community property claim, or whether because of the Halls' suit he has lost his right to enforce it. Such matters are normally addressed in litigation to partition the community property; on the instant record, the plaintiff has simply not shown any actual loss. In our view he has also failed to prove his claim of mental anguish, distress, and loss of credit rating, to any reasonable certainty. Haggerty v. March, supra. Lilly's answer to appeal, seeking additional damages, lacks merit.

Conclusion
For the reasons expressed, the judgment is reversed at Roy Lilly Jr.'s costs.
REVERSED.
WILLIAMS, J., concurs.
NOTES
[1] At the first trial, Lilly testified he was unaware of the $24,000 note; because he did not sign it, he was not found liable on it, only Ms. Johnson. Also, at the first trial Johnson did not concede the amount of her monthly support check from Lilly; at the second trial, she agreed it was $700.