CARAWAY, J.
LThe appellant, who is a dentist and a member of the state regulatory board for dentistry, was sued with others for actions taken by the board concerning the plaintiff and his dentist practice. The allegations of the claim were that the appellant acted in concert with others in a conspiracy to slander or defame the character of the plaintiff. Following appellant’s claim for insurance coverage from his homeowner’s insurance, the insurer intervened in the action seeking a declaratory judgment that no coverage or duty to defend was owed under the policy. The trial court rendered judgment on a motion for summary judgment in favor of the insurer which is now appealed. For the following reasons, we affirm.

Facts

This lawsuit is based on the investigation and disciplinary proceeding against Dr. Ryan Haygood, where Dr. Haygood’s dental license was initially revoked by the Louisiana State Board of Dentistry (“Dental Board”).
The Dental Board began investigating Dr. Haygood and ultimately filed charges against him after receiving formal complaints from patients and other dentists that Dr. Haygood was recommending treatment plans after over-diagnosing or unnecessarily diagnosing patients with periodontal disease. On November 8, 2010, the Dental Board found that Dr. Haygood had violated the Dental Practice Act and revoked his dental license and levied fines against him.
Dr. Haygood appealed the Dental Board’s decision to the Civil District Court of Orleans Parish, which affirmed the Board’s ruling. Then |2Pr. Haygood appealed to . the Louisiana Fourth Circuit Court of Appeal, which vacated and remanded the case. The court found that the Dental Board’s independent counsel participated in the administrative hearing in dual roles as prosecutor and adjudicator in violation of Dr. Haygood’s due process rights.
After the appeal court’s ruling, Dr. Hay-good and his limited liability company filed this suit for damages in 2011, naming the Dental Board and others as defendants.
On June 28, 2013, Dr. Haygood supplemented his petition to add Dr. Herman O. Blackwood, III (“Dr.Blackwood”), as a defendant. Dr. Haygood claims that Dr. Blackwood, with others, caused him damage through actions that were initiated by the Dental Board, resulting in the disciplinary hearing.
After learning of the lawsuit, Dr. Black-wood gave notice of the lawsuit to Encompass Insurance Company of America (“Encompass”), his homeowner’s insurance provider, seeking defense and indemnity. In September of 2013, Encompass provided Dr. Blackwood with written analysis of the claims in the lawsuit and the reasons for its declination of coverage under the Encompass policy. Encompass then, on April 3, 2014, filed an intervention for declaratory judgment in the Haygood lawsuit.
Encompass moved for summary judgment on the coverage issue. Dr. Black-wood .filed his own motion for partial summary judgment on the issues of whether coverage was excluded under the policy *1214 and his entitlement to a reimbursement of defense costs and a continuing defense from Encompass. ^Encompass then filed an opposition brief alleging that it owed no duty to defend Dr. Blackwood.
After a hearing on the motions, the trial court issued a judgment granting Encompass’ motion and denying Dr. Blackwood’s motion, finding that the homeowner’s policy did not provide coverage for the claims asserted against Dr. Blackwood and that Encompass had no duty to defend and indemnify Dr. Blackwood. Dr. Blackwood appeals.

Law

An insurance policy should be interpreted by using ordinary contract principles. Henly v. Phillips Abita Lumber Co., 06-1856 (La.App. 1st Cir.10/3/07), 971 So.2d 1104. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. The words of a contract must be given their generally prevailing meaning. La. C.C. art 2047. Each provision in an insurance policy must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050; La. R.S. 22:881.
To determine if the an insurer owes the insured a duty to defend, the court is confined to the “eight corners” of the allegation and the insurance policy. As stated by the court in Vaughn v. Franklin, 00-0291 (La.App. 1st Cir.3/28/01), 785 So.2d 79, 88:
The insurer’s duty to defend suits brought against its insured is determined by the allegations of the injured plaintiffs petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
|/Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit.
Accordingly, an insurer’s duty to defend is broader than its liability for damages. Yount v. Maisano, 627 So.2d 148 (La.1993). An insurer has a duty to defend if there exists a “single allegation in the plaintiffs petition under which coverage is not unambiguously excluded.” Vaughn, supra.

The ‘Fight Comers” Review

Following the so-called “eight corners” analysis, the parties’ opposing motions for summary judgment rest on the petition’s factual allegations against Dr. Blackwood and the contractual provisions for coverage under the Encompass policy.
In Dr. Haygood’s initial petition, the following charge is made against the executive director of the Dental Board and other dentists/defendants:
(9)
Dr. Haygood and Haygood Dental Care, LLC allege that by virtue of defendants’ participation in highly irregular and unlawful actions in connection with the investigation, prosecution and adjudication of decisions by the Louisiana State Board of Dentistry in “Re: Ryan Haygood, DDS, License No. 5334,” defendants knowingly and intentionally deprived Dr. Haygood of his right to a fair and impartial hearing; presented knowingly false or exaggerated claims, provided evidence obtained through unlawful means; and took other actions which deprived Dr. Haygood of the right and privilege to conduct his *1215 livelihood as a licensed dentist in the State of Louisiana.
This charge was directed toward Dr. Blackwood upon his inclusion as a defendant.
The allegations from the third amended petition that named Dr. Blackwood as a defendant in the suit are listed below:
l¡>4
At all times pertinent herein, Dr. Blackwood was a Board member and the Board District Representative for Northwest Louisiana. He was also a direct competitor of Dr. Haygood.
5
Dr. Blackwood has a deeply negative personal and professional predisposition toward Dr. Haygood that has served as motivation for his orchestrated efforts to pursue disciplinary action against Dr. Haygood.
6
By virtue of Dr. Blackwood’s long tenure and forceful personality, he exercises unusually strong influence with the Board.
7
Plaintiffs are informed, believe, and allege that during Dr. Blackwood’s long tenure on the Board, he has permitted his personal disposition toward particular dentists, especially in the Shreveport Bossier City metropolitan area, to cause the commencement of proceedings by the Board against those he dislikes.
8
Likewise, Dr. Blackwood has a reputation among some of his peers as being of assistance in causing the prompt, inexpensive termination of such disciplinary proceedings. Accordingly, some of Dr. Blackwood’s peers seek to ingratiate themselves with him by, inter alia, making financially beneficial patient referrals to him.
9
The Board has adopted a rule (formally or informally) forbidding district representatives from participating in proceedings against dentists from then-district in order to avoid the appearance of impropriety. Dr. Blackwood acknowledges such a rule.
10
Though Dr. Blackwood has denied any participation in the proceedings against Dr. Haygood, on the basis that such participation would both appear to be and be unfair, Dr. Blackwood, in fact, played an active role in the investigation and proceedings. Dr. Blackwood is a member of the conspiracy to damage Dr. Haygood and has been a part of that effort since at least March 21, 2007 when he encouraged the Board, Barry Ogden, Camp Morrison, and/or other dentists to take action adverse to Dr. Haygood.
11
Dr. Blackwood has actively sought to conceal both the existence of the conspiracy and his role in it by providing false testimony in this action |fias recently as January 2018 regarding his actions that materially supported the illegal action taken against Dr. Haygood.
⅝ ⅝ ⅝ ⅜ ⅜ ⅜
18
Plaintiffs allege that Dr. Blackwood, Dr. Hill, and the other named co-conspirators rendered material assistance to the conspiracy to harm Dr. Haygood, and continue to do so as of the date of this filing. Plaintiffs further allege that the co-conspirators have aided and encouraged actions of the Louisiana State Board of Dentistry since the initial filing of the action as follows:
[[Image here]]
20
*1216 The Louisiana State Board of Dentistry, with the encouragement and assistance of the defendants and others, recommended new proceedings against Dr. Haygood which are largely designed to repeat the unfair and unlawful original proceedings, and to obtain the same result. Despite the remand, however, moreover, the Board has refused to reinstate Dr. Haygood’s wrongfully revoked license. Dr. Haygood was required to defend himself in yet another informal hearing before the Board on May 8, 2013. Aubrey Baudean, Jr. served as the hearing administrator.
21
Baudean concluded that Dr. Haygood failed to meet “his burden” of proving his compliance with the Dental Practice Act, and on May 10, 2013, the Board notified Dr. Haygood of its intent to move forward with the institution of additional formal charges (the “2013 charges”).
⅝ ⅜ ⅝ ⅜ ⅜ ⅝
25
These charges include those based on evidence illegally obtained through the use of unlicensed private investigators Karen Moorhead and Dana Glorioso. This evidence was obtained through fraudulent methods and through methods directly in violation of Louisiana law. The Board knew that such unlawful methods were going to be used to collect evidence against Dr. Haygood, and have been advised that such activities violate Louisiana law. The Board, encouraged by defendants, chose to ignore this illegality and reassert the improper claims in the 2013 charges.
⅝ ⅝ ⅝ ⅜ ⅝ ⅜
29
Plaintiffs believe that the decision to proceed with reinstitution of the former charges and the addition of new charges is based on the Board’s desire to retaliate against Plaintiffs and to gain an advantage in the pending civil lawsuits.
⅜ ⅝ ⅝ ⅝ ⅝ ⅜
35
Plaintiffs believe that the named Defendants and their co-conspirators are currently working to initiate a second sham peer review proceeding based on improper charges, supported by unlawfully gathered evidence, and presided over by an improper hearing panel. Accordingly, the conspiracy to |7damage Plaintiffs is currently continuing, and Plaintiffs’ due process rights granted by the Constitutions of the State of Louisiana and the United State continued to be violated.
The provisions of the Encompass policy that detail coverage are listed as follows:
LIABILITY COVERAGE-HOME
PERSONAL LIABILITY-INSURING AGREEMENT

If a claim or suit is brought against you or any covered person for the following:

1. Personal injury;

2. Bodily injury; or

3. Property damage.

caused by an occurrence to which this coverage applies, we wñll:

1) pay on your behalf claims for which you or any covered person are legally liable ... except as excluded by the provisions listed in the Liability Coverage — Losses We Do Not Cover ...
The Encompass Insurance Policy defines “Personal Injury” as an “injury arising out of one or more of the following offenses: libel, slander, ... or defamation of character.” The definition of “Bodily Injury” is limited to physical bodily harm, sickness or disease.
*1217 The referenced section detailing coverage exclusions in the Encompass policy provides, as follows:
LOSSES WE DO NOT COVER

4. Personal injury does not apply to:

(a) Injury caused by a violation of a law or by, or with the knowledge or the expressed or implied consent of the covered person;

⅜ ⅜ * ⅝ ⅝

(c) Civic or public activities performed for pay by my covered person;

(d) Injury arising out of:

(1) oral or written publication of material, if done by'or at the direction of any covered person with knoivl-edge of its falsity.

| ^Discussion
Dr. Blackwood appeals, arguing that the trial court erroneously relied upon the public service coverage exclusion of 4(c), quoted above. Dr. Blackwood asserts that there was no proof that his service on the Dental Board was “for pay” as required by the exclusion. Dr. Blackwood also argues that the coconspirator claims against him in conjunction with the actions of .certain defendants who were not members of the Dental Board are not unambiguously excluded from coverage under the policy.
Dr. Haygood’s suit is brought against the executive director of the Dental Board, members of the Board, and other dentists with practices in the Shreveport and Bossier City area. The petition asserts that the Dental Board investigated and charged Dr. Haygood with defrauding his patients by improper diagnoses of periodontal disease. The allegations are that those charges were totally unfounded and presented by knowingly false or exaggerated claims. Thus, the investigations were “sham” actions conducted against Dr. Haygood by his competition and the members of the Board, including Dr. Blackwood. All of the charges directed at Dr. Blackwood are framed in terms of a conspiracy between Dr. Blackwood, other members of the Dental Board, and possibly some of the other dentists named' as defendants, yet not members of the Board.
In examining the four corners of the petition, we find that Dr. Haygood’s allegations against Dr. Blackwood amount to a claim for libel, slander, or defamation of character, which is defined to be “personal injury” in the Encompass policy. Nevertheless, we do not find that any publication Inof the alleged defamatory statements against Dr. Haygood is stated to have occurred by Dr. Blapkwood’s mere negligence. Dr. Blackwood’s alleged actions as 'a member of the Dental Board are not stated to rest upon false information upon which Dr. Blackwood negligently relied without knowledge of the falsity. Instead, the allegations are that. Dr. Blackwood and the Dental Board members intentionally presented false and exaggerated claims. Indeed, if the claim against Dr. Blackwood were for defamation and slander resulting negligently from his actions and deliberations on the state Dental Board, then the issue of immunity for Dr. Blackwood under La. R.S. 13:3715.3[1] would be present.
*1218 In Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La.7/10/06), 935 So.2d 669, 681, our Supreme Court determined that Louisiana would follow the Section 580(B) of the Restatement (Second) of Torts in cases involving a private individual allegedly injured by a defamatory falsehood in a matter of public concern. Section 580(B) states:
One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he
(a) knows that the statement is false and that it defames the other,
(b) acts in reckless disregard of these matters, or
110(c) acts negligently in failing to ascertain them.

Kennedy, supra.

Under this standard of negligence for defamation, the defendant may act intentionally or with reckless disregard. On the other hand, the defendant may act simply in an unintentional negligent manner because of his failure to ascertain the truth of the published communication and its defamatory effect on the plaintiff. This distinction between an intentional defamation and a negligent one is most significant for the insurance coverage issue in this case.
Additionally, the Louisiana Civil Code specifically addresses a conspiracy among tortfeasors, making them answerable, in solido, for the damage caused by their offense. La. C.C. art. 2324(A). Louisiana Civil Code Article 2324 does not by itself impose liability for a civil conspiracy. Butz v. Lynch, 97-2166 (La.App. 1st Cir.4/8/98), 710 So.2d 1171, 1174. The actionable element in a claim under this article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part. Id.; ARC Industries, L.L.C. v. Nungesser, 11-331, 11-332 (La.App. 3d Cir.10/5/11), 74 So.3d 864, 867 quoting Ross v. Conoco, Inc., 02-0299 (La.10/15/02), 828 So.2d 546, 552. However, to recover under a theory of civil conspiracy, a plaintiff must show that an agreement existed among the defendants to commit the tortious act which caused the plaintiffs injury. Butz, supra, citing Silver v. Nelson, 610 F.Supp. 505, 516-517 (E.D.La.1985).
|nThe distinction between a negligent defamation of one’s character and an intentional one is clearly recognized when the tortfeasor is charged to have acted in a conspiracy with others to commit the willful act. Torts committed by conspiratorial actors are intentional. Dr. Blackwood is not sued in this action as an independent actor who slandered or defamed Dr. Hay-good. He is sued as one of the conspirators who agreed “to commit an intentional or willful act.” La. C.C. art. 2324(A).
Under Louisiana law, while a contract of insurance may extend to cover the insured’s negligent slander, libel or defamation of character, public policy forbids a person from insuring against his own intentional acts. Swindle v. Haughton Wood Co., 458 So.2d 992 (La.App. 2d Cir.1984). The “personal injury” coverage in the Encompass policy recognizes this public policy and provides in exclusions 4(a) and (d), quoted above, that the publication of defamatory material with the insured’s knowledge of its falsity is an excluded intentional tort.
*1219 Accordingly, we find from our review of the claims presented in the allegations of the petition, intentional slander and defamation through a deliberate conspiracy among the defendants are charged. The “personal injury” coverage therefore does not apply to such actions and likewise no duty to defend is owed by Encompass.[2]

112Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Dr. Blackwood.
AFFIRMED.

. After identifying the Louisiana State Board of Dentistry in Subsection A, La. R.S. 13:3715.3(C) provides:
No member of any such committee designated in Subsection A of this Section or any sponsoring entity, organization, or association on whose behalf the committee is conducting its review shall be liable in damages to any person for any action taken or recommendation made within the scope of the functions of such committee if such committee member acts without malice and in the reasonable belief that such action or *1218 recommendation is warranted by the facts known to him.

. Additionally, we agree with the trial court's view that Dr. Blackwood’s charged actions in conspiring with other Dental Board members implicates exclusion 4(c). The statutory provision for compensation of Dental Board members, La. R.S. 37:755, is properly before us as a matter of law, placing Dr. Black-wood’s actions within that exclusion.