Judgment rendered March 3, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,773-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ANDREW F. PAYNE                                      Plaintiff-Appellant

versus

GREGORY GLEN STANLEY,                               Defendants-Appellees
MITCHELL B. STANLEY, and
MICHAEL BRIAN STANLEY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Morehouse, Louisiana
Trial Court No. 201738

Honorable Robert C. Johnson, Judge

* * * * *

BREITHAUPT, DUBOS, & WOLLESON, LLC    Counsel for Appellant
By: P. Scott Wolleson

LAVALLE B. SALOMON, APLC              Counsel for Appellees
By: Lavelle B. Salomon

* * * * *

Before STONE, THOMPSON, and BLEICH (*Pro Tempore*), JJ.

**BLEICH, J. (*Pro Tempore*).**

The plaintiff, Andrew F. Payne, appeals the trial court's finding that the defendants, Gregory Glen Stanley, Mitchell B. Stanley, and Michael Brian Stanley, were not liable, in solido, for the injuries and damages the plaintiff sustained during the commission of a battery. The plaintiff also appeals the trial court's award of damages and its denial of the claim for vicarious liability on the part of the employer. For the following reasons, we affirm in part, reverse in part, render, and remand with instructions to apportion fault.

## FACTS

The defendants, Mitchell and Gregory Stanley, who are brothers, were the owners of Stanley Brothers Livestock, Inc., and Stanley Brothers Farm, L.L.C., in Bastrop, Louisiana. The defendant, Michael Stanley, the son of Mitchell Stanley, was employed by the business(es).

Stanley Brothers Livestock, Inc., and Stanley Brothers Farm, L.L.C., were known in the local community as the "Bastrop Kill Pen" ("BKP"). BKP offered select rescue horses for individual sale at its facility. However, the primary business of the enterprise was the purchase and sale of rescue horses to export to Mexico for slaughter, processing, and human consumption.

In August 2016, BKP garnered local and national media attention following an investigation into allegations of animal cruelty at its facility. The investigation ensued as a result of a viral video on social media depicting two men (one of whom was Boots Stanley, the son of Gregory

Stanley) torturing a dog and cutting its throat on the premises of BKP.[1] Thereafter, animal rights activists from across the country protested BKP, many traveling to the town of Bastrop to protest at the Morehouse Parish Courthouse.

The media publicity gained the attention of the plaintiff, Andrew F. Payne. The plaintiff, aged 65 and retired, had a history of supporting causes that advocated for the humane treatment of wild horses that had been "rescued." Due to his interest in rescue horses, the plaintiff became intrigued by practices at BKP. On September 22, 2016, the plaintiff went to the Morehouse Parish Courthouse to conduct research regarding potential USDA investigations into BKP's practices. While there, the plaintiff heard a rumor that the USDA would be conducting an investigation that day at the BKP facility. The plaintiff left the courthouse and drove to BKP to attempt to confirm what he had been told.

Because BKP is located on a dead-end road, the plaintiff drove past the business, turned around, and drove past the business again to attempt to leave the area. At this time, the defendants, Mitchell Stanley and Michael Stanley, along with Boots Stanley, were working on a trailer in BKP's parking area. Mitchell noticed the plaintiff's vehicle driving on the public roadway. As the plaintiff was trying to leave the area, Mitchell yelled for the plaintiff to stop. The plaintiff stopped, and he and Mitchell became embroiled in an argument. Mitchell accused the plaintiff of theft and trespassing and threatened to call law enforcement. Meanwhile, Gregory,

---

[1] Boots Stanley and the other man depicted in the video were arrested and charged with multiple accounts of aggravated animal cruelty in relation to that incident. The defendants involved in the instant lawsuit were not involved in the offense regarding the dog.

who had heard Mitchell yelling, exited the barn "to see what was happening." According to the plaintiff, while Mitchell confronted him on the driver's side of his vehicle, Gregory reached into the passenger window and "grabbed and held" him. The plaintiff testified that he managed to escape Gregory's hold. However, Michael threw a wooden board into the vehicle and struck the plaintiff in the face.[2]

The plaintiff drove to the Bastrop Police Department and reported the incident, and an investigation ensued. The officers obtained a statement from the plaintiff and took photographs of his injuries. They also retrieved the wooden board from the plaintiff's vehicle and logged it into evidence.

Meanwhile, Mitchell called the Bastrop Police Department and reported that ongoing thefts had occurred at his place of business, and he had observed a "suspicious white truck" driving on the road leading to the business. However, Mitchell failed to mention the confrontation/attack regarding the plaintiff to the police officers. Following an investigation, Michael Stanley was arrested and charged with aggravated battery, and Gregory Stanley was arrested and charged with simple battery.

The plaintiff sustained injuries that required medical attention. He was treated at Morehouse General Hospital for facial lacerations, abrasions and a nasal fracture, which later required reconstructive surgery. The injuries to the plaintiff's face resulted in damage to his olfactory nerve, causing the permanent loss of taste and smell. The plaintiff was also diagnosed with anxiety and post-traumatic stress disorder.

---

[2] The plaintiff used his cellphone to record the encounter, and the recording was introduced into evidence at trial. Mitchell was depicted in the plaintiff's video footage holding his cellphone as if he was recording the incident. However, a search of Mitchell's phone did not yield any video footage of the encounter.

Further, according to the plaintiff, in the months following the attack, the defendants used the BKP Facebook page to accuse him of committing various criminal acts. He also asserts that the defendants conspired with others to defame his character.

The plaintiff filed a lawsuit against the defendants, Gregory, Mitchell, and Michael Stanley. He also named Stanley Brothers Livestock, Inc., and Stanley Brothers Farm, L.L.C., as defendants. The plaintiff alleged claims of battery, intentional infliction of emotional distress, and defamation.

A bench trial was held. The plaintiff testified regarding the day of the incident and the extent of his injuries. The defendants denied acting in concert to harm the plaintiff. Mitchell testified that when he was arguing with the plaintiff, he was unaware that Michael was standing behind him holding the wooden board. Michael testified that when he saw the plaintiff's truck, he assumed that the plaintiff was someone who had been following and "harassing" his cousin, Boots, after Boots had had been arrested for cutting the dog's throat in the prior incident. According to Michael, he did not intend to throw the board at the *plaintiff*; he threw it at the plaintiff's *truck*. Michael also testified that he was employed by his father on a part-time basis. He admitted that he was "helping" on the farm on the day of the incident, but he was not "working" that day.

At the conclusion of the trial, the trial court found that Michael was solely liable for the battery he committed against the plaintiff because the evidence did not establish that the defendants formed an agreement to attack the plaintiff. The court found that neither Mitchell nor Gregory was aware that Michael intended to throw the wooden board at the plaintiff.

4

With regard to the separate battery committed by Gregory (reaching into the passenger window and grabbing the plaintiff), the trial court concluded that the evidence established that Gregory committed the battery. However, the court found that Gregory was not liable for damages because the plaintiff failed to prove that he suffered any damages as a result of that separate battery.

In addition, the trial court found that the defendants, Stanley Brothers Livestock, Inc., and Stanley Brothers Farm, L.L.C., were not vicariously liable for Michael's conduct. The trial court noted that Michael was employed by the businesses and that he had "no specific work hours or designated workdays." The court also noted that Michael received "cash payments as well as paychecks for his work," and "the plaintiff did not present any testimony from business employees or any documentary evidence such as a timesheet or other payroll records to dispute the defendant's testimony that he was not working on the day of the incident."

The trial court went on to conclude that the plaintiff failed to present evidence to refute Michael's claim that his decision to throw the board was personal in nature, and was unrelated to his employment at BKP. The court stated, "Surely throwing a wooden board at the plaintiff was not in the ambit of Michael Stanley's assigned duties, nor does the court find that it was a risk fairly attributable to the furtherance of any employment objectives of Stanley Brothers Livestock under these facts and circumstances."

Furthermore, the trial court found that the plaintiff failed to meet his burden of proving intentional infliction of emotional distress and defamation. The court awarded damages as follows:

| | |
|---|---|
| Past Medical Expenses: | $21,419.84 |
| Future Medical Expenses: | $0 |
| TOTAL: | $21,419.84 |
| Physical pain and suffering (past and present): | $75,000 |
| Mental pain and suffering (past and present): | $25,000 |
| Loss of Enjoyment of Life: | $15,000 |
| TOTAL: | $115,000 |

The plaintiff appeals.

## DISCUSSION

The plaintiff contends the trial court erred in finding that the defendants, Michael, Mitchell, and Gregory Stanley, were not liable, in solido, for his injuries. He argues that the evidence established that the three men participated in the attack, and their actions showed that they entered into a tacit agreement, and thus conspired to commit an intentional or willful act. The plaintiff maintains that there was no evidence that he provoked the defendants or that they acted in self-defense.

An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Cole v. State Dept. of Public Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So. 2d 1134; *Stobart v.*

6

*State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993); *Jewitt v. Alvarez*, 50,083 (La. App. 2 Cir. 9/30/15), 179 So. 3d 645.

Our jurisprudence summarizes the appropriate standard of review as follows:

> To reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Stobart*, *supra*; *Jewitt*, *supra*.

> Even if an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Cole*, *supra*; *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989).

> Moreover, where the factfinder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Rosell*, *supra*; *Jewitt*, *supra*.

In the instant case, the plaintiff alleged that the defendants conspired to commit a battery. Under La. C.C. art. 2315, a person is liable for acts which cause damage to another. The intentional tort of battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact. *Griffith v. Young*, 46,184 (La. App. 2 Cir. 4/13/11), 62 So. 3d 856; *Touchet v. Hampton*, 08-833 (La. App. 3 Cir.12/11/08), 1 So. 3d 729, *writ denied*, 09-0076 (La.3/27/09), 5 So. 3d 141.

The Louisiana Civil Code addresses a conspiracy among tortfeasors, making them answerable, in solido, for the damage caused by their offense. La. C.C. art. 2324(A). The term "conspiracy" generally means a plan by two

or more persons to accomplish some unlawful, immoral, criminal, or evil purpose. *Hall v. Lilly*, 29,624 (La. App. 2 Cir. 6/18/97), 697 So. 2d 676; *Walker v. American Honda Motor Co.*, 93-1659 (La. App. 3 Cir. 6/1/94), 640 So. 2d 794, *writ denied*, 94-1741 (La. 10/7/94), 644 So. 2d 644. Once the conspiracy is sufficiently established, the act done by one in furtherance of the unlawful design is, in law, the act of all. *Curole v. Delcambre*, 16-550 (La. App. 3 Cir. 8/21/17), 224 So. 3d 1074, *writ denied*, 17-1506, 17-1491 (La.1/9/18), 231 So. 3d 652, 653, citing *Rush v. Town of Farmerville*, 156 La. 857, 101 So. 243 (1924). When a tort is perpetrated through the instrumentality of a combination or conspiracy, the party wronged and injured may look beyond the actual participants in committing the injury, and join with them, as defendants, all who cooperated in, advised, or assisted in the accomplishment of the common design, for co-trespassers, are bound, in solido. *Id.*

La. C.C. art. 2324 does not, by itself, impose liability for a civil conspiracy. *Haygood v. Dies*, 49,972 (La. App. 2 Cir. 8/12/15), 174 So. 3d 1211; *Butz v. Lynch,* 97-2166 (La. App. 1 Cir. 4/8/98), 710 So. 2d 1171. The actionable element in a claim under this article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part. *Id.* However, to recover under a theory of civil conspiracy, a plaintiff must show that an agreement existed among the defendants to commit the tortious act which caused the plaintiff's injury. *Id.* A conspiracy may be proved by circumstantial evidence. *Haygood*, *supra*; *Hall*, *supra*.

The conspiracy action is for damages caused by acts committed pursuant to a formed conspiracy, and all of the conspirators will be regarded as having assisted or encouraged the performance of those acts. *Thomas v. N. 40 Land Dev., Inc.*, 04-0610 (La. App. 4 Cir. 1/26/05), 894 So. 2d 1160, citing *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F. 3d 553 (5th Cir. 1995). Proof of a conspiracy can be by actual knowledge of both parties or overt actions with another, or can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator. *Stephens v. Bail Enforcement of La.*, 96-0809 (La. App. 1 Cir. 2/14/97), 690 So. 2d 124, *writ denied*, 97-0585 (La. 4/18/97), 692 So. 2d 454; *Curole*; *supra*. The plaintiff must therefore prove an unlawful act and assistance or encouragement that amounts to a conspiracy. The assistance or encouragement must be of such quality and character that a jury would be permitted to infer from it an underlying agreement and act that is the essence of the conspiracy. *Thomas*, *supra*; *Chrysler Credit*, *supra*.

After a thorough examination of this record, we find the evidence in the record is sufficient to establish the elements of a conspiracy. Although there is no direct evidence that the defendants "pre-devised" a plan to attack the plaintiff, the defendants' actions showed that they acted in concert, assisting one another during the attack. During the trial, Mitchell testified that he saw the plaintiff driving a white truck on the road near BKP, and he believed the plaintiff may have been the person who had stolen items from his business. Mitchell stated that he yelled for the plaintiff to stop the vehicle, and the plaintiff complied. As Mitchell ran to confront the plaintiff, Michael also approached the vehicle. Gregory, who testified that he heard

9

Mitchell yelling, also arrived on the scene. While Mitchell engaged the plaintiff in a verbal confrontation on the driver's side of the vehicle, Gregory approached the passenger side. Gregory then reached into the vehicle and grabbed the plaintiff as Mitchell attempted to record the interaction by video. When the plaintiff managed to escape Gregory's hold on him, Michael threw a board into the vehicle, striking the plaintiff in his face. The attack, which resulted in the plaintiff's injuries, did not begin when Michael threw the board at the plaintiff. It began when Mitchell observed the "white truck" and began running toward it with Michael and Gregory in tow. Although the defendants denied knowing that Michael was going to throw the board, they were all aware that Mitchell and the plaintiff were engaged in a heated verbal confrontation and that Gregory had reached into the plaintiff's truck. Under the facts of this case, we find that the defendants' tacit agreement to detain, confront, and batter the plaintiff resulted in the plaintiff's injuries. Consequently, we find that the trial court erred in finding that the defendants were not liable, in solido, for the plaintiff's injuries. This portion is reversed, and judgment is rendered finding that Mitchell Stanley, Gregory Stanley, and Michael Stanley are liable, in solido, for the damages incurred by the plaintiff.

The plaintiff also contends the trial court erred in denying his claim for vicarious liability on the part of the defendants, Stanley Brothers Livestock, Inc., and Stanley Brothers Farm, L.L.C. According to the plaintiff, he met his burden of proving that he was injured during the course and scope of the defendants' employment.

10

Employers are answerable for the damage caused by their employees in the exercise of the functions in which the worker is employed. La. C.C. art. 2320. An employer's vicarious liability for conduct not his own extends only to the employee's tortious conduct which occurs within the course and scope of the employment. *Orgeron v. McDonald*, 93-1353 (La. 7/5/94), 639 So. 2d 224; *Candler v. Henderson*, 48,441 (La. App. 2 Cir. 11/20/13), 128 So. 3d 587, 590, *writ denied*, 13-2980 (La. 2/28/14), 134 So. 3d 1179. In general, an employee is acting within the course and scope of his employment when the conduct is the type he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. *Timmons v. Silman*, 99-3264 (La. 5/16/00), 761 So.2d 507; *Candler*, *supra*.

An employer is responsible for the negligent acts of its employee when the conduct is so closely connected in time, place and causation to the employee's job duties as to constitute a risk of harm attributable to the employer's business. *Orgeron*, *supra*; *Candler*, *supra*. Such a connection is established when the employer has reason to expect the employee to undertake the mission and the employee reasonably expected to be compensated for the task. *Candler*, *supra*; *Young v. Mooney*, 01-1592 (La. App. 3 Cir. 5/1/02), 815 So. 2d 1107. In determining whether the employee's conduct is employment-related, the court assesses several factors, including the payment of wages by the employer, the employer's power of control, the employee's duty to perform the act in question, the time, place and purpose of the act in relation to serving the employer, the relationship between the employee's act and the employer's business, the

11

employee's motivation for performing the act and the employer's reasonable expectation that the employee would perform the act. *Orgeron*, *supra*; *Candler*, *supra*.

In the present case, the plaintiff presented evidence indicating that defendants committed the intentional torts on the road in front of the business(es) during business hours. However, the business(es) would not be vicariously liable absent evidence that the defendants' tortious acts were primarily employment rooted or reasonably incidental to the performance of their job duties. Thus, to recover against the employer, the plaintiff bore the burden of proving that the Stanleys' tortious conduct was so closely connected to their employment duties that the risk of harm was fairly attributable to the business(es).

Our review of the record reveals that neither the plaintiff's testimony nor the exhibits that were entered into evidence addressed the Stanleys' particular job duties, and the record does not support a finding that defendants' torts were employment rooted. To the contrary, the paltry evidence presented demonstrated that the Stanleys' tortious conduct was based upon their own personal considerations or emotions, rather than a desire to further the interests of the business(es). The plaintiff testified that he went to BKP to ascertain whether the USDA was conducting an investigation of the business. However, there is no evidence that the defendants knew the plaintiff's identity, his reasons for being on the premises, or that the attack was related to the defendants' employment. The evidence established that Mitchell confronted the plaintiff, an argument ensued, tempers flared, and the situation escalated. Based on the record

before us, we find that the plaintiff failed to satisfy his burden of proving that physical attack furthered the objectives of BPK or was primarily rooted in the Stanleys' employment with and/or ownership of Stanley Brothers Livestock, Stanley Brothers Farms, or BKP. This assignment lacks merit.

The plaintiff further contends that the trial court abused its discretion in awarding damages that were insufficient to compensate him for the extent of his injuries. The plaintiff maintains that he underwent reconstructive surgery of his nose, and he suffered permanent damage to his olfactory nerve and can no longer smell or taste. According to the plaintiff, with no sense of smell or taste, he will suffer the effects of the attack for the rest of his life.

One damaged through the fault of another is entitled to full indemnification for the damages caused thereby. La. C.C. art. 2315; *Wainwright v. Fontenot*, 00-0492 (La. 10/17/00), 774 So. 2d 70; *Jones v. Fin. Indem. Co.*, 52,421 (La. App. 2 Cir. 1/16/19), 264 So. 3d 660. General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of lifestyle which cannot be definitely measured in monetary terms. *Bellard v. American Cent. Ins. Co.*, 07-1335 (La. 4/18/08), 980 So. 2d 654; *Jones*, *supra*. The trier of fact has much discretion in the assessment of general damages. La. C.C. art. 2324.1. The role of the appellate court in reviewing general damage awards is not to decide what is an appropriate award, but to review the exercise of discretion by the trial court. *Wainwright*, *supra*; *Jones*, *supra*.

13

The physical injuries sustained by the plaintiff are undisputed. As stated above, the plaintiff suffered a fractured nose, for which he underwent surgery to repair it. The plaintiff also suffered damage to his olfactory nerve, resulting in the permanent loss of smell and taste. The trial court awarded to the plaintiff $75,000 for past and present physical pain and suffering, $25,000 for past and present mental anguish, and $15,000 for loss of enjoyment of life.

During the trial, the plaintiff testified regarding the pain and trauma he experienced as a result of the attack. Dr. Lawrence Danna also testified with regard to the extent of the plaintiff's injuries, and the plaintiff's medical records detail that the plaintiff sustained a nasal fracture, which required reconstructive surgery, and his olfactory nerve was permanently damaged. Dr. William McCown, a clinical psychologist, testified that the plaintiff suffered from depression, anxiety, and PTSD as a result of the attack. Dr. John D. Edwards, a licensed professional counselor, testified that the plaintiff presented with complaints of anxiety, difficulty sleeping, nervousness, extreme caution, and hypervigilance.

Based on the evidence presented, we cannot say the trial court's award of $75,000 for past and present physical pain and suffering, $25,000 for past and present mental pain and suffering, and $10,000 for loss of enjoyment of life constituted an abuse of the wide discretion afforded the trier of fact in the assessment of such damages. Thus, this assignment of error lacks merit.

Further, the plaintiff contends the trial court erred in failing to award any amount for future medical expenses. He argues that he presented

14

uncontroverted evidence that he will require counseling for PTSD; therefore, he should have been awarded damages for future medical expenses.

To recover the cost of future medical expenses, a tort victim must establish the probability of such expenses with supporting medical testimony and estimations of their probable cost. *Menard v. Lafayette Ins. Co.*, 09-1869 (La. 3/16/10), 31 So. 3d 996. The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that those expenses will be medically necessary. *Menard*, *supra*; *Terry v. Simmons*, 51,200 (La. App. 2 Cir. 2/15/17), 215 So. 3d 410.

In the instant case, Dr. McCown evaluated the plaintiff on October 20, 2016. Dr. McCown stated plaintiff "might" benefit from future psychological treatment and opined that the plaintiff would need 18-30 counseling sessions to see an improvement in his condition. However, during his testimony on cross-examination, Dr. McCown stated that his findings were "tentative" and his evaluation of the plaintiff was only meant to ascertain the "severity of [the plaintiff's] symptoms." The record reveals that in the three years between the incident and the trial, the plaintiff put forth little effort to attend the sessions Dr. McCown opined were necessary. The plaintiff attended three sessions with Dr. Edwards in 2016, one session in 2017, and one session in 2019. Dr. Edwards noted that the plaintiff's hearing impairment, which was unrelated to the incident in dispute, was a "strong detriment" to mental health counseling and that the plaintiff would become frustrated during the sessions. However, the record does not contain any evidence that the plaintiff attempted to address his hearing deficit.

15

Based on the record before us, we find that the medical testimony indicating the plaintiff's need for future medical treatment for PTSD was speculative at best. Dr. McCown indicated that the plaintiff could "potentially" benefit from future mental health treatment. Therefore, in light of the record as a whole, we find that the trial court's conclusion that the plaintiff was not entitled to an award for future medical expenses was reasonable. This assignment lacks merit.

## CONCLUSION

For the foregoing reasons, that portion of the judgment, finding that the defendants, Michael Stanley, Mitchell Stanley, and Gregory Stanley were not liable, in solido, and dismissing the plaintiff's claims against Mitchell Stanley and Gregory Stanley, is reversed. Judgment is hereby rendered against Michael Stanley, Mitchell Stanley, and Gregory Stanley, in solido. The judgment is otherwise affirmed. The case is remanded to the trial court to apportion fault. Costs of this appeal are assessed to the appellees, Gregory Stanley, Mitchell Stanley, and Michael Stanley.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED; REMANDED WITH INSTRUCTIONS.**