WILLIAMS, J.
hln this personal injury case, the trial court rendered a judgment in favor of the plaintiff, Barbara Jewitt, finding that defendant, Norma Alvarez, was 100% at fault in causing the automobile accident. The court awarded damages in the amount of $21,209.61, but limited the award to $15,000, the jurisdictional limit for West Monroe City Court. For the following reasons, we affirm.
FACTS
On April 13, 2013, the parties herein were involved in a three-car automobile accident on Interstate 20 in West Monroe, Louisiana. Defendant Norma Alvarez was driving a vehicle owned by her husband, defendant Julian S. Esparza.[1] Defendant *647 Hazel Lee rear-ended Alvarez. Seconds later, the plaintiff, Barbara Jewitt, rear-ended defendant Lee. West Monroe police officer, Jacob May, witnessed the collisions and issued a citation to Alvarez for careless operation of a vehicle.
The plaintiff filed a lawsuit seeking damages for injuries she sustained in the accident. The plaintiff named as defendants Alvarez, Esparza and his automobile insurer, USAgencies Casualty Insurance Company (“USAgencies”), and Lee and her automobile insurer, Hartford Casualty Insurance Company.
During the trial, Alvarez testified as follows: on the day of the accident, she left her sister’s house to go to Wal-Mart in West Monroe; she entered the Fifth Street ramp to Interstate 20, activated her turn signal and merged onto the Interstate; she did not see any oncoming traffic prior to ^merging onto the Interstate; she did not see an approaching vehicle but she felt “a hit from behind;” she was traveling approximately 60 miles per hour when the collision occurred; she has lived in West Monroe approximately five years; she has never had a driver’s license in the United States; she has never taken a driver’s education class in the United States; she is familiar with road signs and is an attentive driver; she cannot read or speak English;[2] she has been driving approximately 15 years without a driver’s license.
Officer May testified that he was the primary investigating officer for the accident in dispute. He stated that at. the time of the accident, he had been called to the Interstate to investigate an unrelated matter. He further testified as follows:
While I was dealing with that call, I heard behind me, tires squealing_ [Ajsoon as I turned around to look[J I noticed a red pick-up truck and another vehicle crash into' it[.] I believe shortly after that[,] another vehicle crashed into that vehicle as I was trying to call for more officers to come to the interstate due to an accident.
Officer May also testified that he noticed that the vehicle being driven by Alvarez “wasn’t traveling as fast as the vehicles that were passing me on the Interstate.” According to Officer May, the Alvarez vehicle appeared to have “almost stopped” in the lane of travel.”[3] The officer opined that Alvarez’s Uslow speed was the cause of the accident. On cross-examination, Officer May admitted that he did not have a specific estimate for the speed of Alvarez’s vehicle.
The plaintiff testified as follows: she saw the police officer on the right of the Interstate; she glanced into her left mirror for traffic to attempt to change lanes; when she looked ahead again, she noticed that the vehicle in front of her had stopped; she hit her brakes but she collided with the vehicle in front of her; the events transpired in “a couple of seconds”; she did not see Alvarez’s vehicle priojr to rear-ending Lee; she was traveling! approximately 60 miles per hour; therefwas nothing she could have done to avoid the *648 collision; she sustained injuries as a result of the accident; she was transported to St. Francis Medical Center via ambulance.[4]
Following the trial, the trial court found that Alvarez was 100% at fault in causing the accident. The trial court stated:
I have seen eases where someone automatically changed lanes abruptly and the ear ran into the back of them. The one hit from behind is[,] maybe[,] presumed to be at fault, but not in' that case. I have had a lot over the years where the 'rear ended driver was at fault.... [T]hat is why when the officer testified that the lady created a hazard — 1 agree ... with the officer that her low rate of speed created á hazard, I find that.
>|! * *
I guess the critical factors to me ... we .have an unlicensed, untrained driver with the limited- ability to read traffic signs[,] who has been driving for 15 years[,3 a disaster waiting to happen[.] It wouldn’t have happened if she would . have been traveling 60 [miles per hour].
Jx * * *
[B]ased on what I have heard, I don’t find any fault on behalf .of the Plaintiff.
* *. *
I know [the plaintiff] tried to get over a id 1 think that was the proper thing to d) and she looked up and boom and if someone is basically at almost a stop on the interstate, there is not a whole lot you can do — things are going to happen fast and so whatever presumption might have applied I think has been overcome and I think her pleading guilty to a careless operation is part of overcoming that presumption as well.[5]
* • » *
Alvarez and USÁgencies (collectively, “Alvarez”) now appeal.
DISCUSSION
Alvarez contends the trial court erred in finding that she was solely liable in causing the accident by driving too slowly. She argues that the trial court erroneously failed to apply the presumption of negligence against the following motorists because “the only logical inference” is that the following motorists were either speeding or were not paying attention.
The driver of a following motor vehicle must maintain a reasonable and prudent distance from the preceding vehicle, having due regard for the speed of such vehicle, and the traffic upon and the condition of the roadway. LSA-R.S. 32:81(A); Brewer v. J.B. Hunt, Inc., 2009-1408 (La.3/16/10), 85 So.3d 230. Although a presumption of negligence • generally arises when-a following motorist is involved in a rear-end collision, the following motorist may escape liability for the collision by establishing the unpredictable driving-of the preceding motorist created a sudden emergency that the ^following motorist could not have reasonably anticipated. Cheairs v. State ex rel. Dept. of Transp. & Dev., 2003-0680 (La.12/3/03), 861 So.2d 536.
The sudden emergency doctrine provides as follows:
Anyone who finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circum *649 stances or the .best means to adopt in order to avoid-an impending danger, is not guilty of negligence if.he fails to adopt what subsequently and- upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence.
Dupree v. Sayes, 42,792 (La.App.2d Cir.12/5/07), 974 So.2d 22; Holland v. State Farm Mut. Auto. Ins. Co., 42,753 (La.App.2d Cir.12/5/07), 973 So.2d 134.
An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or dearly wrong. Cole v. State Dept. of Public Safety & Corrections, 2001-2123 (La.9/4/02), 825 So.2d 1184; Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880 (La.1998); State Farm Mut. Auto. Ins. Co. v. Carter, 46,608 (La.App.2d Cir.11/2/11), 77 So.3d 1036. Our jurisprudence summarizes the manifest error/deariy wrong standard- of review- as follows;
To reverse a factfinder’s determination, the appellate court must find from the record that a reasonable' factual basis does not exist for the finding of the trial court and that the record establishes that the finding is dearly wrong. Sto-bart, supra', Carrier, supra.
Even if - an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed' upon review Inwhere conflict exists in the testimony. Cole, supra-, Rosell v. ESCO, 649 So.2d 840 (La.1989). Moreover, where the factfinder’s; conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to, the trier of fact, because only, the trier of fact can be aware of the variations in demeanor and tone of voice .that bear -so heavily, on .the listener’s understanding and belief in what is said. Rosell, supra; Holland, supra, Wilhite v. Thompson, 42,395 (La.App.2d Cir.8/15/07), 962 So.2d 493.
Additionally, the manifest error rule also regulates , a trial court’s finding regarding the allocation of fault. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607; Holland, supra. The trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong or manifestly erroneous. Holland, supra; Buchignani v. Lafayette Ins. Co., 41,384 (La.App.2d Cir.8/23/06), 938 So.2d 1198.
In the instant case, the trial court found Alvarez to be 100% at fault in causing the accident. Officer May was an eyewitness to the collisions. He testified that Alvarez was operating her vehicle “at a low rate of speed” and it “appeared that [she] was almost stopped.” The plaintiff testified that she saw that Lee’s vehicle had stopped and attempted to maneuver to the next lane. She was prevented from doing so because of traffic in that lane. Both the plaintiff and Officer May testified that the accident “happened fast,” with the plaintiff stating'-that the events occurred within “a couple of seconds.” After hearing the testimony of the witnesses, the trial court specifically found that Alvarez created a hazard because of her low rate of speed. The court also found that the plaintiff overcame the adverse presumption against her, as the following motorist, by showing that Alvarez created -a sudden emergency that she could not have reasonably.anticipated. The court noted that the presence of oncoming traffic prevented the plaintiff |?from. moving to the next lane; therefore,-she was unable to take any eva *650 sive action to prevent the accident. Considering the record before us, we find that the trial court was clearly within its province in assessing the credibility of the witnesses and concluding that Alvarez was solely at fault.
CONCLUSION
For the foregoing reasons, the judgment entered in favor of the plaintiff, Barbara Jewitt,' is affirmed. Costs of the appeal are assessed to defendants, Norma Alvarez and USAgencies Casualty Insurance Company.
AFFIRMED.

. During the trial, the parties stipulated that Alvarez was a permissive user- of Esparza’s vehicle.

. During the trial, Alvarez testified with the assistance of an interpreter.

. During his testimony, Officer May read the narrative portion of the police report he prepared on the date of the accident, which stated in pertinent part:
[[Image here]]
I observed vehicle one traveling west on I-20 in the inside lane at a low rate of speed.
I observed vehicle [two] strike vehicle [one] in the rear due to vehicle one’s low rate of speed. I later observed vehicle three strike vehicle two in the rear — also, due to vehicle one’s low rate of speed.
[[Image here]]
During Officer's May’s testimony, counsel for Alvarez stated, “I stipulate that vehicle one was traveling slower than normal[.]”

. Lee was ill and was unable to testify at trial.

. The court awarded damages to the plaintiff as Mows: $.7,500 in general damages; $13,459.61 in special damages; and $250 in property damages. The court then limited the award to $15,000, the jurisdictional limit for West Monroe City Court.