Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,344-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DAVID BRIGGS                                    Plaintiff-Appellee

versus

JUNIS SILAS, DARRELL HUNT                       Defendants-Appellants
AND PROGRESSIVE
INSURANCE COMPANY

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2021CV00066

Honorable Tammy Deon Lee, Judge

* * * * *

CASLER, BORDELON,                               Counsel for Appellants,
LAWLER & GELDER                                 Junis Silas and
By: Jessica Crain Sanders                        Progressive Insurance
                                                Company

DAVID BRIGGS                                    In Proper Person

* * * * *

Before STONE, COX, and THOMPSON, JJ.

**COX, J.**

This civil appeal arises from Monroe City Court, Ouachita Parish, Louisiana, regarding injuries and damages the plaintiff allegedly sustained as a result of a motor vehicle accident. The trial court found the defendants liable for the accident and awarded the plaintiff $10,250 in general damages, and through an amended judgment, $7,542.49 in special damages. For the reasons assigned below, the trial court's judgment is reversed.

## FACTS

On January 19, 2021,[1] David Briggs ("Briggs") filed a petition for damages against Junis Silas ("Silas") and Progressive Insurance Company (collectively "Appellants"). In his petition, Briggs alleged to have sustained personal injuries and damages to his vehicle, a 2006 Pontiac, following a motor vehicle accident that occurred on January 16, 2020.

Briggs claimed he was traveling westbound on Louisville Avenue in the right-hand lane when a 2014 Chevrolet Cruze owned by Darrell Hunt[2] but operated by Silas, struck the rear of his vehicle. In response, Appellants argued that moments before the accident, Briggs was in the left-hand lane when he suddenly merged into the right-hand lane without warning, causing Silas to collide with the back of Briggs' vehicle.

On October 17, 2022, a bench trial was held wherein the following testimony was adduced:

---

[1] In the interest of thoroughness, this Court highlights that the date of injury occurred January 16, 2020, and Briggs filed suit for damages on January 19, 2021, more than one year from the date of the accident. See La. C.C. art. 3492. However, the issue was never addressed, and in accordance with La. C.C.P. art. 927, courts of appeal "shall not supply the objection of prescription" as it must be specifically pleaded.

[2] Hunt was later dismissed from the suit.

First, Briggs, proceedings pro se, testified that on the day of the accident, he and his former girlfriend were en route to Ouachita Valley Credit Union ("Credit Union") on Louisville Avenue, traveling westbound in the right-hand lane. Briggs explained that when the car in front of him stopped, he slowed down, and Silas' vehicle collided into the back of his Pontiac. Briggs testified that shortly after the accident, he was transported to Elite Healthcare Alliance ("Elite Healthcare")[3] where he finally spoke with Officer Timothy Stevens ("Officer Stevens"). Briggs stated that Officer Stevens, without taking either his or his former girlfriend's statements, made negative assumptions about his character, determined he was the liable party for the accident, and then issued him a citation.

Briggs testified that shortly after the citation was issued, nurses ceased treatment, he was abruptly discharged, and he was later unable to receive any form of chiropractic treatment to address the injuries to his back and leg. Briggs then informed the trial court he brought copies of his medical records as evidence of his injuries and treatments he received; however, no documents were introduced during trial.

In addressing damages to his vehicle, Briggs testified the back bumper was torn off and "the backside of the wheel, you couldn't hardly drive like a trunk like, you know, you just had to leave it alone until it could be fixed." Briggs stated that because of the outstanding ticket, he could not receive an estimate for damages or have the vehicle fixed. Briggs testified that his vehicle remained inoperable for two years which forced him to leave it in the

---

[3] Based on the evidence provided in the record, it appears that Briggs was first transported to Ochsner LSU Health, and then he personally sought treatment with Elite Healthcare.

parking lot of his apartment complex before his landlord had the vehicle towed.

On cross-examination, counsel for Appellants introduced copies of Briggs' medical records regarding treatment he received prior to the accident, including treatment for vision loss in his right eye as well as forms where Briggs indicated he smoked marijuana every other day. In response, Briggs generally denied receiving treatment for his eye or that he ever smoked marijuana. Briggs then admitted that in the two years since the accident, he never took pictures of the damages to his vehicle. Briggs then reiterated he was unable to receive an estimate for damages or have repairs done because of the outstanding citation.

Counsel for the Appellants then introduced copies of Briggs' medical records following the accident, highlighting Briggs voluntarily discharged himself as staff notes indicated that Briggs ". . . got upset and said that he was going to St. Francis. [Briggs] snapped and started cursing the staff and wanted his paperwork." Briggs denied that he voluntarily left the hospital and insisted staff refused to treat him after Officer Stevens issued the citation. Finally, counsel introduced copies of traffic citations Briggs received after the accident involving the same 2006 Pontiac involved in the present case. Counsel noted the dates of the citations as October 24, 2020; December 7, 2020; and June 26, 2021. Briggs then denied receiving any traffic citations following the accident.

Next, Officer Stevens reviewed his crash report and testified that on January 16, 2020, at approximately 11:29 a.m., he was dispatched to Louisville Avenue regarding a motor vehicle accident. Officer Stevens noted the roads were wet that day. He then explained that in the normal

course of his investigations he speaks with and checks on the conditions of all parties involved and records their statements for his report. Officer Stevens stated that in this case, he spoke with Brenda Bryant ("Bryant"), an independent witness, and Silas at the scene of the accident. He recalled that both Bryant and Silas generally reported that Briggs was in the left-hand lane before he suddenly merged into the right-hand lane, causing Silas to rear-end the back of Briggs' vehicle.

Officer Stevens admitted he could not remember whether he spoke with Briggs at the scene, but stated he did take Briggs' statement at the hospital. Officer Stevens testified that Briggs reported that he was in the right-hand lane and that as he slowed down, Silas hit the back of his vehicle. Officer Stevens stated that after he recorded Briggs' statement, he determined Briggs was at fault for the accident and issued a citation for improper lane use. Officer Stevens explained that after Briggs refused to sign the citation, he explained to Briggs that he could potentially face a fine for failure to do so. Officer Stevens then generally denied making assumptions about Brigg's character.

Next, Bryant testified that on the day of the accident, she was traveling behind Silas headed westbound in the right-hand lane. Bryant explained she was en route to the Credit Union, which was located on the right side of Louisville Avenue, when she noticed Briggs' vehicle suddenly merge into the right-hand lane in front of Silas. Bryant testified that because of Briggs' sudden maneuver and the wetness of the road from the misty weather, Silas did not have sufficient time to stop or avoid rear-ending Briggs' vehicle. Bryant testified that she parked behind Silas with her emergency lights on before she checked on both drivers. Bryant stated that

after she spoke with Officer Stevens, he spoke with Briggs and she left the scene to go to the Credit Union. She stated that when she returned, Briggs and his passenger were being loaded into an ambulance.

Finally, Silas testified that on January 16, 2020, he was traveling with his daughter in the right-hand lane on Louisville Avenue. Silas testified he was near the Credit Union and approaching a traffic stop when Briggs suddenly merged in front of him from the left-hand lane. Silas explained that he had to "stomp" on his brakes to try and avoid hitting Briggs, but because the lane change happened quickly and without warning, and the road was slick, he was unable to avoid the collision. Silas stated that he moved his vehicle to the middle lane to avoid getting hit by oncoming traffic, and thereafter spoke with Officer Stevens before he and his daughter went to the hospital. After questioning from the trial court, Silas clarified he was not near a traffic light or stop when the accident occurred; rather, he was approaching traffic that was stopped at the nearest traffic light.

At the close of testimony, the trial court ruled in favor of Briggs, and in its written judgment requested parties to submit post-trial memoranda relative to quantum. In their memorandum, Appellants requested the trial court revisit the issue of liability and generally argued damages should not be awarded because no evidence was introduced to prove Briggs' alleged injuries and damages. Although Briggs did not file a memorandum in accordance with the judgment, on October 21, 2022, he submitted several medical records from Elite Healthcare to the clerk's office.

Judgment was rendered in open court; however, it was not signed until December 29, 2022, and stated, in pertinent part:

5

> This Court, having heard the testimony of the parties, and
> thoroughly reviewed the evidence presented, concluded that
> there existed a causal connection between the accident and the
> injuries sustained as a result thereof, and thus finds that the
> Defendants are truly and justly indebted unto David Briggs for
> general damages in the full sum of TEN THOUSAND, TWO
> HUNDRED AND FIFTY ($10,250.00) and 00/100 DOLLARS,
> with interest. Special damages are to be awarded for the full
> cost of all medicals incurred with Ochsner LSU Health,
> Acadian Ambulance Service and Elite Healthcare Alliance, as a
> result of the automobile accident[.]
>
> **IT IS FURTHER ORDERED** that the Defendants are
> indebted unto the Petitioner for all property damage sustained
> to his vehicle as a result of this accident.
>
> All court costs are assessed unto the Defendants. **IT IS
> HEREBY ORDERED, ADJUDGED, AND DECREED** that
> there be Judgment in favor of the Petitioner, and against the
> Defendant for the damages sought herein.

On July 5, 2023, the trial court amended the judgment, awarding Briggs

$7,542.49 in special damages. This appeal followed, with Appellants

presenting five assignments of error.[4]

## DISCUSSION

*Mischaracterization of Testimony*

In their first assignment of error, Appellants argue that the trial court

erred in its ruling regarding liability because its determination was not based

on the testimony or evidence in the record. Specifically, Appellants

maintain that the trial court's ruling was based on a mischaracterization of

testimony from defense witnesses Officer Stevens, Silas, and Bryant.

An appellate court may not set aside a trial court's finding of fact in

the absence of manifest error or unless it is clearly wrong. Where two

permissible views of the evidence exist, the factfinder's choice between

---

[4] Briggs did not filed a brief regarding this matter and did not appear for oral argument.

6

them cannot be manifestly erroneous or clearly wrong. *Cole v. State Dept. of Public Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So. 2d 1134; *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993); *Jewitt v. Alvarez*, 50,083 (La. App. 2 Cir. 9/30/15), 179 So. 3d 645.

Therefore, to reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Jewitt*, *supra*. Even if an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id*.

Moreover, where the factfinder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Id*.

In the present case, the trial court was presented with two different versions of the accident in question. Briggs testified he was in the right-hand lane when he slowed down and Silas rear-ended the back of his Pontiac. In contrast, Silas, Bryant, and Officer Stevens testified that Silas was traveling in the right-hand lane when Briggs suddenly merged in front of him from the left-hand lane, leaving him with little time to apply his brakes and avoid the collision. Given the conflicting testimony, the trial court made credibility determinations in its assessment of liability.

With respect to Officer Stevens, the trial court found that Officer Stevens was "not credible in the least," because he "refused to speak with all

parties and witnesses involved" and "neglected to interview [sic] Briggs and his passenger about the incident." Appellants argue this assessment of Officer Stevens' testimony does not reflect his actual testimony and highlights the following colloquy:

Q: On this particular accident, did you have occasion to speak to both of the drivers involved in this accident?

A: Yes, ma'am.

Q: You heard testimony from Mr. Briggs that you came to the hospital where he was on the date of the accident. Did you also speak to him at the scene or was it just the hospital?

A: I don't recall but I know my practice is that when I get to the scene I speak with both the drivers and if there [are] any passengers and ask them if they need medical attention and what happened.

Q: And, were you able to speak to Mr. Briggs that day at all?

A: Yes.

Q: Did Mr. Briggs in fact tell you what happened in the accident?

A: Yes, he did.

Q: Okay. What did Mr. Briggs report to you?

A: He stated that. . .

Trial Court: Okay. Let me get this straight. So you just testified that you don't recall if you spoke to Briggs. So, did you speak to him or did you not?

Q: (Inaudible)

Trial Court: No, no, no. I got this. Hold on. Let me, let me do this. What's your answer?

A: Uh, I don't recall speaking to him at the scene but I know I spoke to him at the hospital.

Trial Court: All right. Now, you may go ahead with your next question.

Q: What did he tell you?

8

A: He stated that he was traveling westbound on Louisville Avenue about the 2100 block and that he was in the right-hand lane, slowing down, and when he did Vehicle 2 struck him from behind.

* * *

Trial Court: All right. Now, we received testimony earlier from Mr. Briggs where he has informed The Court that once you got to the hospital that you didn't talk to him at all. You didn't ask him about anything that happened regarding the accident at the hospital. Did you speak with him? Did you ask him? Did you give him the opportunity to tell you what happened to him at the accident or to get his version?

A: Yes, ma'am. I did. And that's why it was listed in my report.

* * *

Trial Court: Okay. Did you tell him initially? Or, did you tell him, did you allow him to explain to you his version before you gave the ticket?

A: I allowed him to explain his version.

Trial Court: Okay. Tell me, tell me what he told you his version was.

A: That he was traveling westbound on Louisville. He was in the right-hand lane and I believe, slowing, yeah. And slowing down and that's when Vehicle 2 struck him.

Further, with respect to Silas' and Bryant's testimonies, the trial court

provided:

However, there is one caveat that differs in that Ms. Bryant states that after the accident happened, she was still behind the vehicle driven by Mr. Silas. And, you have Mr. Silas, who says that 'no I was not still in the right lane. My car was in the turning lane. And I did all of this within one minute.' The Court has also taken notice of the fact that the distances, in that Mr. Silas said that they were approaching a light, where there is no light there. And, thereafter, coming back and saying, 'well, it happened before we got to the Ouachita Valley Credit Union.' There is a light. And so, if that maneuver was actually untaken by Mr. Briggs to get into the right lane, there would have been time. And so, The Court is not able to make a determination that Mr. Briggs was the at-fault driver.

9

Appellants maintain that where Silas moved his vehicle after the accident has no bearing on how the accident occurred. Appellants further argue that this assessment did not accurately reflect Silas's testimony and highlight the following colloquy:

Q: Can you tell [t]he Court how the accident happened?

A: I was driving in the right lane and out of nowhere he came from out of the left lane into my lane and we were approaching a traffic stop. And, I stomped my brakes. I tried to stop and my car slid into the back of his.

&ast; &ast; &ast;

Trial Court: All right. All right, Mr. Silas, you said that you were in the right lane and you approaching a light. What light are you referring to?

A: The light, uh, close to, I believe [sic] the Washington Street where Walmart is.

Trial Court: Okay. How far away from that light did the accident occur?

A: It was a pretty long line.

Trial Court: Okay.

A: . . .at the light.

Trial Court: Okay. So, why did you, why was your testimony is that you were approaching the light if there was there that length?

A: I believe I just mis-phrased it. Uh, not at the light. The traffic that was at the light.

Trial Court: Okay. And, so that traffic would've been backed up all the way back to where the accident was?

A: Yes, ma'am.

&ast; &ast; &ast;

Trial Court: All right. When the accident occurred, how far away, do you know where the Ouachita Valley Credit Union is?

A: Yes, ma'am.

10

Trial Court: How far away from that Credit Union did the accident occur?

A: Uh, it was pretty close, I guess, because I know I remember his car being in the road like, uh, it's where it says Used Cars, I believe. It's somewhere, it's a car lot, (Inaudible) and his car ended up parked over there. So, we were pretty close and it's on Ouachita Valley in the car place.

In our review of this matter, we find there was insufficient evidence in the record to support the trial court's ruling. While we must extend great deference to the trial court's vast discretion regarding the credibility of witnesses, in this case, the testimony provided simply does not reflect the trial court's findings on liability. We first highlight that in its ruling, the trial court only determined that Briggs was not the at-fault driver; it did not determine whether Silas was at fault for the accident.

Nevertheless, the trial court, in part, based its ruling on its belief that in failing to speak with and take Briggs' statements, Officer Stevens "set the tone for everything else happening here." However, Officer Stevens specifically testified that he took statements from *all* parties present at the scene of the accident and that the information was documented in his crash report, which he read at trial. This is further corroborated by Bryant's testimony that she saw Officer Stevens speak with Briggs while at the scene. Moreover, Officer Stevens clarified that while he could not specifically remember if he spoke with Briggs at the scene, he did recall taking Briggs' statement at the hospital. However, even if the trial court found that Officer Stevens was not credible, its assessment of Silas' and Bryant's testimonies also fails to support its ruling.

The trial court did not state that either Silas or Bryant was not credible, only that there existed a caveat in the placement of Silas' car after

11

the accident. We agree with Appellants and find that where Silas moved his vehicle sometime after the accident is immaterial as to how the accident occurred. With respect to Silas' testimony, we highlight that Silas initially testified that just before the accident, he approached a "traffic stop." The trial court then asked Silas to clarify where the traffic "light" was in relation to the accident, to which Silas testified that there was a long line of traffic ahead of him from the nearest traffic light.

After the trial court questioned why Silas would testify that he approached a traffic light when a considerable amount of traffic was ahead of him, Silas clarified that he actually approached a *stop in traffic*. Any discrepancies about Silas's location just before the accident appear to have stemmed from a misunderstanding in the use of his phrase "traffic stop." Moreover, we highlight that Silas' testimony was corroborated not only by Officer Stevens but also by Bryant, an independent witness to the accident.

Without disturbing the trial court's credibility determination as to Officer Stevens, this Court, based on testimony from Silas and Bryant, nevertheless finds that a reasonable factual basis does not exist to support the trial court's findings of fact.

*Burden of Proof*

By their second assignment of error, Appellants argue that the trial court incorrectly determined that Briggs did not maintain the burden of proof in this matter. Appellants highlight that in its oral ruling, the trial court stated, in part:

> And so, The Court is not able to make a determination that Mr. Briggs was the at-fault driver. And from the evidence that The Court, and the testimony that The Court has reviewed, we do not find, there is not enough evidence. Even speaking to everyone here today that Mr. Briggs was the at-fault driver.

12

Therefore, based upon the testimony that This Court has heard, The Court does find in favor of you, Mr. Briggs, as it relates to the accident that occurred."

In finding that there was insufficient evidence to find that Briggs was not liable for the accident, Appellants assert that the trial court incorrectly placed the burden of proof on Appellants to establish liability and therefore, the trial court's ruling should be reversed.

Louisiana jurisprudence regarding rear-end collisions is well-settled. The driver of a following motor vehicle must maintain a reasonable and prudent distance from the preceding vehicle, having due regard for the speed of such vehicle, and the traffic upon and the condition of the highway. La. R.S. 32:81(A). As such, a presumption of negligence arises when a following motorist is involved in a rear-end collision. *Jewitt*, *supra.* The following motorist, however, may escape liability for the collision by establishing the unpredictable driving of the preceding motorist created a sudden emergency that the following motorist could not have reasonably anticipated. *Id*.; *Bloxham v. HDI-Gerling Am. Ins. Co.*, 52,177 (La. App. 2 Cir. 6/27/18), 251 So. 3d 601.

For example, a driver who changes lanes without first determining that the move can be completed safely and then is struck from the rear by a following car cannot rely on the rear-end collision presumption to shift the burden to the following driver. *Brooks v. Belote*, 41,900 (La. App. 2 Cir. 2/28/07), 953 So. 2d 846. Moreover, a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety. La. R.S. 32:79. Therefore, a driver who changes lanes may be comparatively at fault if he is rear-ended. *Bloxham*, *supra*; *Greene v.*

13

*Lovisa*, 16-660 (La. App. 5 Cir. 5/17/17), 221 So. 3d 270, *writ denied*, 17-1017 (La. 10/9/17), 227 So. 3d 837.

This Court in *Anthony v. State Farm Mut. Ins. Co.*, 227 So. 2d 180 (La. App. 2 Cir. 1969) has previously provided:

> A motorist whose vehicle is struck from the rear by reason of his inopportune change of lanes may not thereby convert the occurrence into a rear-end collision so as to impose the burden upon the other motorist to exculpate himself from negligence. In such cases, *plaintiffs have the burden to establish, by a reasonable preponderance of evidence, the facts upon which they rely, that is, in this instance, that a rear-end collision occurred*. Otherwise a defendant would bear the burden of establishing his freedom from fault in all cases involving accidents occasioned by a forward motorist's changing of traffic lanes. Such a shift of the burden of proof is neither authorized nor countenanced by statutory enactments or by pronouncements found in the jurisprudence. (Emphasis added.)

In the present case, it is undisputed that Silas hit the back of Briggs' Pontiac, presenting itself as a typical rear-end collision such that under our jurisprudence, Silas was presumed negligent for the accident. However, upon the testimony of both Silas and Bryant that the accident occurred only because Briggs changed from the left-hand lane into the right-hand lane suddenly and without warning, the burden shifted then to Briggs to establish that he either did not change lanes or that he safely merged into the other lane.

A review of the trial court's ruling indicates the trial court mechanically applied the presumption against the following vehicle to determine that Briggs was not liable for the accident. Moreover, it appears the trial court, in disregarding testimony from Silas and Bryant that the accident occurred because of an improper lane change, failed to assign the burden of proof to Briggs to establish, by a preponderance of the evidence, that Silas caused the rear-end collision. In this case, Briggs simply did not

14

present any witnesses or evidence, save his own self-serving testimony, to establish that a rear-end collision occurred.

Based on the aforementioned legal principles, we find that there was insufficient evidence in the record to support the trial court's ruling.

*Admission of New Evidence*

By their third assignment of error, Appellants argue the trial court erred when it reopened and/or left open the trial record for the admission of new evidence and then considered what would be otherwise inadmissible evidence to calculate damages. Specifically, Appellants contend that the trial court should not have considered any evidence Briggs submitted post-trial as it was presented outside of the trial record, was not available for cross-examination, and did not adhere to the rules of evidence.

La. C.C.P. art. 1631(A) provides that the court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at trial, so that justice is done. La. C.C.P. art. 1632 sets forth the normal order of trial as follows:

> (1) The opening statements by the plaintiff and the defendant, in that order;
> (2) The presentation of the evidence of the plaintiff and of the defendant, in that order;
> (3) The presentation of the evidence of the plaintiff in rebuttal; and
> (4) The argument of the plaintiff, of the defendant, and of the plaintiff in rebuttal, in that order.

However, La. C.C.P. art. 1632 provides that this order may be varied by the court when circumstances so justify.

The decision to hold open or reopen a case for production of additional evidence rests within the discretion of the trial judge and will not

be disturbed on appeal unless manifestly erroneous. *Thomas v. Thomas*, 51,894 (La. App. 2 Cir. 2/28/18), 246 So. 3d 736. To prevent a miscarriage of justice, a trial court should not hesitate to reopen a case for the taking of additional evidence when properly requested, and an appellate court should not hesitate to set aside the ruling of a trial court on such matters in a case of manifest abuse of discretion. *Id.*; *Antley v. Brantly*, 28,049 (La. App. 2 Cir. 2/28/96), 669 So. 2d 685.

After a review of the record in this case, we cannot say that the trial court did not abuse its discretion in either leaving the record open or reopening the record for submission of additional evidence.

Here, after the trial court rendered judgment as to liability, it ordered both parties to submit post-trial memoranda regarding quantum, giving Briggs the additional option to submit the information in a letter. In this case, Briggs submitted a note to the trial court and attached, for the first time, medical records and bills accumulated after the accident. The documents in question included: 1) an invoice from Acadian Ambulance Service, in the amount of $1,772.96; 2) an Affidavit of Certification from Ochsner LSU Health, in the amount of $1,614.53; and 3) an invoice from Elite Healthcare Alliance, in the amount of $4,205. However, these documents were not introduced into evidence at trial and should not have been considered thereafter in the trial court's assessment for damages.

This Court acknowledges that Briggs was a pro se litigant in this matter, and thus not privy to the knowledge of procedural and substantive law in civil matters. As a result, the trial court may have attempted to extend Briggs leniency in presenting his case. However, regardless of Briggs' status as a pro se litigant, he maintained responsibility over his case, was

16

required to meet his burden of proof in all matters, and present any evidence he may have had to satisfy that burden. In this case, Briggs was provided with the opportunity to present evidence of both medical records and damages to his vehicle but failed to do so. During trial, Briggs stated he had copies of his medical records, but even after the trial court allowed him to retrieve any records he may have had, Briggs failed to submit any documents during trial.

Further, at no point after the close of testimony or judgment was rendered did Briggs request to reopen or leave the record open for additional evidence at the close of testimony. Similarly, the trial court did not mention that it would either leave the record open for submission of additional evidence nor did it request additional documents related to quantum. The submission of these post-trial documents which Briggs was given ample opportunity to submit during trial, effectively denied Appellants the opportunity to cross-examine Briggs regarding the documents, rebut, or object to the admission of the documents at trial. Because Briggs made no effort to present any evidence during trial, we find that the trial court was not required to reopen this case.

*Quantum*

By their fourth assignment of error, Appellants urge that the trial court abused its discretion in awarding general damages because no evidence was properly submitted for the trial court to assess. Appellants further contend that even if Briggs' post-trial documents were properly considered, the submitted documents do not reflect that Briggs' injuries were causally related to the accident as he did not seek medical treatment until 10 months after the accident.

17

In the assessment of damages for personal injury, much discretion must be left to the judge or jury. La. C.C. art. 2324.1. General damages include mental or physical pain and suffering, inconvenience and loss of intellectual or physical enjoyment that cannot be definitively measured in monetary terms. *Montgomery v. Kedgy*, 44,601 (La. App. 2 Cir. 8/26/09), 21 So. 3d 980, *writ denied*, 09-2110 (La. 11/25/09), 22 So. 3d 167. There is no mechanical rule for determining general damages; rather the facts and circumstances of each case control. However, factors to be considered in assessing quantum for pain and suffering include severity and duration. *Kose v. Cablevision of Shreveport*, 32,855 (La. App. 2 Cir. 4/5/00), 755 So. 2d 1039, *writ denied*, 764 So. 2d 964 (La. 6/16/00), and *writ denied*, 00-1289 (La. 6/16/00), 765 So. 2d 340.

Before the trial court's general damage award may be disturbed, the record must clearly show that the factfinder abused its broad discretion in making the award. *Id.* The role of the appellate court in reviewing general damages is not to decide what it considers an appropriate award, but to review the exercise of discretion by the trier of fact. *Criswell v. Kelley*, 54,188 (La. App. 2 Cir. 3/9/22), 335 So. 3d 483.

The finding of an abuse of discretion must be based on the particular injuries sustained and their effect on the particular injured person. *Montgomery, supra.* An award made in the trial court may not be modified unless it is unsupported by the record. The question presented on appeal is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. *Kose, supra.* After a determination that an award constitutes an abuse of discretion, the appellate court may reduce an excessive award to the highest

18

amount, or increase an inadequate award to the lowest amount, reasonably within the factfinder's discretion. *Montgomery, supra.*

As discussed in the previous assignment of error, this Court finds that because Briggs' medical records were not properly introduced, the only evidence the trial court could have relied upon to render an award was Briggs' testimony and post-trial note. However, after a review of the record, we find that neither source could sufficiently support the $10,250.00 award for general damages.

With respect to Briggs' testimony, we highlight that Briggs only generally mentioned that he injured his back and leg after the accident. He later stated he received a neck brace and was treated for his back and arm, but made no mention of the type of injuries he sustained. Further, at no point during trial did Briggs testify as to the extent or severity of his injuries, specific treatments or medications he was administered, or whether he was required to seek continual rehabilitative therapy to address any potential complications. Briggs provided no information or evidence regarding residual effects the injuries had on other aspects of his life, including his ability to work or complete everyday tasks.

Moreover, despite testimony that Briggs' former girlfriend was present when the accident occurred, he presented no other supporting testimony regarding his injuries or damages to his vehicle. We further highlight that Briggs testified that following the accident, his vehicle remained in the parking lot of his apartment complex for two years, but that at no point during that time did he ever photograph or document any of the damages his vehicle sustained. Instead, he only provided that the bumper was torn off and the vehicle was inoperable.

19

Likewise, we note that the post-trial note Briggs submitted also fails to support an award for general damages. Here, in lieu of a memorandum or letter to the court, Briggs submitted a sparsely written note to the clerk's office, which seemingly appears to be the letter the trial court requested he submit regarding damages. The letter vaguely includes what appears to be injuries Briggs claimed to have suffered, providing: "This is for my neck, back, arm, leg, ankle," and loss of his vehicle in the amount of $75,756. We note that there is no supporting information to support this sum total and without more, the calculation for the loss of damages is unsupported from the totality of this record.

Accordingly, we find that the trial court abused its discretion in awarding general damages.

*Special Damages*

By their final assignment of error, Appellants likewise assert that the trial court erred in relying on inadmissible and unintroduced evidence to award special damages for medical costs and property damage.

Special damages are those which have a "ready market value," such that the amount of damages theoretically may be determined with relative certainty, including medical expenses and lost wages. *Criswell*, *supra*; *Baack v. McIntosh*, 20-01054 (La. 6/30/21), 333 So. 3d 1206. A plaintiff is required to prove special damages by a preponderance of the evidence, and the district court's findings in this respect are subject to manifest error standard. *Id.*; *Montgomery*, *supra*.

In reviewing this assignment of error, this Court again finds that because Briggs' medical records were not properly introduced and no documentation or photographs were introduced regarding Briggs' vehicle,

20

there is no evidence in the record that would support or quantify an award of $7,542.49 in special damages.

Accordingly, we find that the trial court's award of special damages was manifestly erroneous.

## CONCLUSION

After a review of the record, we respectfully reverse the trial court's judgment finding that Briggs was not liable for the accident and its award for general and special damages. All costs are assessed to Briggs.

**REVERSED.**