Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,892-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DAMITA BRASWELL                                    Plaintiff-Appellee

versus

DAWN DUNCAN, WARREN                                Defendants
CARY, JR., HONEY JUPITER,
AND WHITNEY BROWN YOUNG

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 79,857

Honorable Michael Owens Craig, Judge

* * * * *

WHITNEY BROWN YOUNG                                In Proper Person,
                                                   Appellant

THE SMITH LAW OFFICE, LLC                          Counsel for Appellee
By: Eskridge E. Smith, Jr.

* * * * *

Before COX, STEPHENS, and HUNTER, JJ.

**COX, J.**

This civil dispute arises out of the 26th Judicial District Court, Webster Parish, Louisiana. Appellant, Whitney Brown Young ("Young"),[1] appeals a judgment granting the Appellee, Damita Braswell ("Braswell"), rental value and other fees following the judicial partition of two inherited properties the parties held in indivision with their siblings. For the reasons stated herein, we amend the portion of the judgment regarding the dates of payments and affirm all other portions.

## FACTS

Following the succession of Kay D. Caesar, a judgment of possession was rendered on May 18, 2021, wherein Braswell, Young, Warren Cary Jr. ("Cary"), Dawn Duncan, and Honey Jupiter[2] inherited a one-fifth ownership interest in two family homes located at 602 College Street and 413 E. Union in Minden, Louisiana. On August 25, 2021, Braswell sent notice expressing her desire to either sell her one-fifth interest in the inherited properties or in the alternative, file to have the properties partitioned by licitation.

On March 4, 2022, Braswell filed a petition for partition, naming each of her siblings as defendants. In her petition, Braswell claimed that Young and Cary respectively resided in the 413 E. Union and 602 College Street homes and had exclusive use and occupancy of the properties. Braswell requested deductions be made from Young's and Cary's one-fifth shares of

---

[1] This Court notes that while Whitney Brown Young referred to herself as simply Whitney Brown, the record reflects that the appellant is designated as Whitney Brown Young.

[2] Duncan agreed to the partition of the properties and waived her appearance at trial, and Jupiter's curator provided Jupiter would not be present at trial.

the proceeds.  The trial was held on August 23, 2023, with both Young and Cary appearing in proper person.  The following testimony was presented:

First, Braswell testified that following her mother's succession, she and her siblings inherited a one-fifth interest each in their mother's two properties: two homes located on 602 College Street and 413 E. Union in Minden.  Braswell testified that on August 25, 2011, she notified her siblings that she wanted to either sell her one-fifth interest or, if they could not reach an agreement, file for a partition because the property could be divided equally.  Braswell explained that she requested damages because Young lived at 413 E. Union and denied her access and use of the property.  Specifically, Braswell stated that Young told her in a text message that if she "ever step[ped] foot on 413, [she] would never leave."  On cross-examination, Braswell admitted that Young offered to buy her interest in both properties for $8,800.

Braswell further acknowledged that Cary has resided in the home on 602 College since 2017, paying their mother $500 in rent.  On inquiry from the trial court, Cary clarified that he paid his mother each month with the intention of purchasing the property from her.  Cary admitted he did not pay the monthly rent to the succession after his mother passed but stated that no one requested that he continue to make payments.  Braswell then testified that their mother kept documents of the rental agreement but there were no deeds or copies of any documents to show Cary purchased the home before their mother passed or that their mother had relinquished the property to him.

Next, Randall Miller ("Miller"), a real estate appraiser, was tendered as an expert witness in the appraisal of residential real estate.  Miller stated

that he was contacted to determine the market and rental value of the two properties. Miller explained that his methodology in making appraisals and property valuation was based on comparable sales and active listings in the area. Specifically, Miller stated that generally, the "market is going to be determined by location, neighborhood, [and] age of the house" as well as bedroom and bathroom count, and whether the home was for sale or rent. Miller admitted that while it was customary practice to conduct an exterior inspection of the property, it was better to conduct an interior inspection because its condition could impact the appraisal value and determine if the property was in good, marketable condition, which would increase its value. Miller admitted that in this case he only conducted an exterior inspection of both properties. Miller also stated that it was typical to conduct an exterior inspection when he cannot get access to a property.

With respect to the 602 College Street property, Miller testified that Caesar hired him to inspect the interior of the home several years ago. He stated that Caesar renovated the home after that inspection, but he did not appraise the property after the updates. Regarding this current appraisal, Miller stated that he compared the 602 College Street property to properties in the same area that had also been renovated within the past six or ten years. From this, Miller stated that the property, which was approximately 1,520 square feet, was valued at $113,000 with a monthly lease or rental value of $850. With respect to the 413 E. Union property, Miller admitted that he did not conduct an interior inspection of the home. Miller stated that from his exterior inspection, he appraised the property, which was approximately 1,800 square feet, at $126,000, with a monthly lease or rental value of $950.

3

Finally, Young testified that on September 9, 2021, shortly after she moved into the home on 413 E. Union, she notified her siblings of her move and asked if they wanted any of their mother's possessions. Young stated that during this time, Braswell messaged her and expressed an interest in moving into the 413 E. Union so she could live "rent-free." Young stated that she never prohibited Braswell or any of her siblings from coming to the home and denied that she ever threatened Braswell from coming onto the property. Young stated that she has always allowed her siblings to come to the home and stay there if they needed or wanted to and that everyone has a key to access the home. Young explained that she and her four children only moved into the 413 E. Union property because she evacuated her home after Hurricane Laura and could find no other place to live. Young stressed that her financial situation affected her decision to move into the home and this was the only home she could find that could comfortably accommodate her and her children.

Young testified that she offered to buy Braswell's one-fifth interest for $8,800, which was based on the original value of the properties as it was listed in the succession from the tax assessor. The trial court then explained that the value placed by the tax assessor is not an appraised value of the home. From there, Young reiterated that she never denied Braswell use of the home and that under Louisiana law, she was not required to pay Braswell rent for the use or occupancy of the property.

At the close of testimony, the trial court expressed its sympathy with the parties for the loss of their mother and recognized the difficulties that can arise from resolving the intricacies of succession property, especially when held in indivision with other individuals. The trial court then stated:

4

. . . [I]f there is property that is owned . . . in indivision by multiple heirs and it cannot be divided equally, the only option is to order it to be divided by licitation, which is to be sold, and for the proceeds to be divided. There's no—there's not really any other option without some legal basis to show that there was a prior contractual agreement or that there was some will that provided for some other—a distribution of the assets. It just comes down to simply y'all can't divide two houses in five parts. And so the only thing you can divide in five parts is the money. And whether or not you agree to the appraisals that were done by Mr. Millers—I have no reason to doubt that they're accurate, but once-now that I'm rendering an order for the properties to be sold at public sale and for the monies to be divided by licitation, that's my appreciation, the sheriff's office is going to have to do a separate appraisal anyway pursuant to the law, so those appraisals are going come out either very consistent to Mr. Miller's or different because, who knows, Mr. Miller may be the one they use to do the appraisals.

But both of you are going to have to allow whoever does the appraisals access to the home to come inside and do the appropriate measurements and things like that. The costs of the appraisals will—and sale is set by statute. The sheriff's officer will get their percentage of the sale, so there's no reason for me to do that. I do understand that the two of you are living in those properties and that you have a right of ownership.

. . .

So as to the rental values, Mr. Miller is deemed as an expert and used the comparables to determine that rental values; however, as to the College Street address, I'm going to override the—I am going to award to the—the succession, the heirs, and set the rental value so that each of the heirs are to receive one-fifth interest of the rental values. As to the College Street address, it's unrefuted testimony from Mr. Carey that he was paying $500 a month at the time to his mother and—and that she was—that was evidently set by her, and I'm not going to disturb that. So we'll set the rental value of the College Street property at $500. As to the Union Street, the rental value will be set at $950. The—once the proceeds. . . the reimbursement or payment—I don't know if Mr. Miller has been paid yet or not, but the. . . his $1,500 fee will be paid or reimbursed from the proceeds of the sale. . . and $2,500 in attorney fees.

The trial court's judgment provided that, in addition to the judicial partition of both properties, Braswell would be awarded damages for her loss of right to occupy the two properties, to be measured by the rental value of the property. The judgment specified that the damages owed by Cary

5

regarding the 602 College property, would be assessed "in the amount of one-fifth of the rental value. . . in the amount of $500 per month, from the date of the filing of the Judgment of Possession" on May 18, 2021, through the date paid, with damages to be deducted from the sale proceeds.

Moreover, the judgment provided that the damages owed by Young regarding the 413 E. Union property would be "one-fifth of the rental value of the property" from August 2021, through the date paid, in the amount of one-fifth of the rental value of $950 per month. The judgment further decreed that the expenses of the sale, including appraiser fees set at $1,500, curator fees set at $300, and attorney fees set at $2,500, would be deducted from the sale proceeds. It is from this judgment that Young appeals.

## DISCUSSION

As a precursor, this Court highlights the following procedural order of this case. The notice of judgment was issued on October 13, 2023. Young filed a motion to set aside judgment on November 14, 2023. Young argued generally that as a co-owner, she was not required to pay rent to another co-owner for her use and enjoyment of the property jointly owned by all parties. Moreover, she attached a copy of a text exchange between the co-owners, asserting that Braswell never requested use or occupancy of the property and was subsequently denied. However, there is no indication in the record that any party was given notice of the motion or even received a copy of it.

On December 5, 2023, Young filed a notice of appeal, which the trial court granted on January 23, 2024. The trial court later scheduled a hearing to address the motion to set aside the judgment for April 9, 2024. Braswell objected to the motion. Regardless of the scheduled hearing, this Court notes that the motion to set aside judgment was untimely filed and appears

6

not to have been properly served to the involved parties. Accordingly, the text exchange attached to the motion cannot be considered by this Court.

This Court further expresses its sympathies with all parties involved, and like the trial court before us, acknowledges the inherent difficulties that can unfortunately arise when families inherit property after a loved one's passing.

*Rental Damages*

By her first assignment of error, Young contends that the trial court erred in granting Braswell damages for the rental value of the 413 E. Union property. Young argues that because she is a one-fifth co-owner, she was entitled to use the property and was not required to pay rent for the exclusive use of the co-owned property. Moreover, she argues that co-owners are not indebted to one another for the occupancy or enjoyment of the co-owned property unless a co-owner has been denied or deprived of their right of possession by another co-owner's exclusive occupancy. Young remains adamant that she never threatened or denied Braswell or any other sibling use or occupancy of the property; therefore, Braswell was not entitled to damages.

Ownership of the same thing by two or more persons is ownership in indivision. La. C.C. art. 797. The proportion of ownership of co-owners is presumed to be equal unless by juridical act or other provisions of law they are shown to be unequal shares. *Id.* The use and management of a thing held in indivision is determined by agreement of the co-owners. La. C.C. art. 801. Except as otherwise provided in Article 801, a co-owner is entitled to use the thing held in indivision according to its destination, but he cannot prevent another co-owner from making such use of it. La. C.C. art. 802.

7

By her testimony, Braswell stated that she informed her siblings that she desired to move into the 413 E. Union home, but was subsequently denied occupancy by Young, who Braswell claimed threatened her if she attempted to come onto the property. Young denied such claims and testified that all of her siblings had access to the property and were welcome to stay if they wanted. Young also testified that Braswell did not discuss the matter with her again after the initial conversation.

An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Cole v. State Dept. of Public Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So. 2d 1134; *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993); *Jewitt v. Alvarez*, 50,083 (La. App. 2 Cir. 9/30/15), 179 So. 3d 645. Therefore, to reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Jewitt*, *supra*.

Even if an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id*. Where the factfinder's conclusions are based on determinations regarding credibility of witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and

tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Id.*

In the present case, the trial court was presented with two different versions of the facts which led to this suit. Braswell claimed that she requested and was denied occupancy, and Young denied those claims. From the record and testimony, it does not appear there was ever an agreement among any of the siblings as to the use or occupancy of 413 E. Union or, specifically, that Young would use the home to the exclusion of any other co-owner. Therefore, given the conflict in testimony, the trial court heard and weighed the testimony and credibility of the parties, and given the judgment rendered in this case, it appears the trial court was of the opinion Young occupied the 413 E. Union home exclusively.

Given the testimony presented in this case, we give great deference to the trial court and its factual findings. Therefore, we find that this argument lacks merit.

However, this Court disagrees with the time frame imposed by the trial court in which Young was ordered to pay rental damages. The trial court ordered that rent was retroactive to August 2021, presumably when Braswell sent formal notice to the other co-owners of her desire to either sell her one-fifth interest or have the properties partitioned. A co-owner in exclusive possession may be liable for rent, but only beginning on the date another co-owner has demanded occupancy and has been refused. *Von Drake v. Rogers*, 43,546 (La. App. 2 Cir. 10/8/08), 996 So. 2d 608.

In the record before this Court, Braswell did not demand damages in rental value until she filed the instant suit in March of 2022. Accordingly,

Young's one-fifth portion owed for occupancy of 413 E. Union should be made retroactive to March 4, 2022.

*Award for Expert and Appraisal Fees*

By her second assignment of error, Young argues that the trial court erred in awarding fees related to expert testimony and the property appraisal. Specifically, Young claims that Miller's fees should not have been awarded because Miller did not conduct an in-person appraisal of the 413 E. Union property. Young argues that since Miller's last inspection, a tree fell on the home, "the foundation is sinking, there are plumbing issues" due to a winter storm in February 2021, and that the "exterior is deteriorating due to improper carpentry." Young generally denies that Miller conducted a proper inspection of the property and without an updated appraisal, the trial court erred in awarding fees for Miller's testimony.

As a general proposition, a fact finder may evaluate expert testimony by the same principles that apply to other witnesses and has great discretion to accept or reject expert or lay opinion. *Morris v. Rainwater*, 51,018 (La. App. 2 Cir. 1/11/17), 218 So. 3d 226, *writ denied*, 17-0414 (La. 5/1/17), 220 So. 3d 744. The effect and weight to be given to expert testimony rests within the broad discretion of the trier of fact. *Marsh v. USAgencies* Cas. Ins. Co., 42,176 (La. App. 2d Cir. 5/16/07), 957 So. 2d 901, *writ denied*, 07-1286 (La. 10/26/07), 966 So. 2d 575. When findings are based on determinations regarding the credibility of witnesses, lay and expert alike, the manifest error standard demands great deference to the trier of fact's findings. *State, Dept. of Transp. & Dev.* v. *Biscomb*, 47,223 (La. App. 2 Cir. 6/20/12), 94 So. 3d 193.

In this case, Miller testified that he had 22 years of experience in appraising residential homes and was state-certified. Miller explained his methodology in conducting his appraisal of both properties and his detailed reports were submitted to the trial court. Although Miller did not conduct an interior inspection of the property, it appears that Miller may not have had access to the property as indicated by his testimony that exterior inspections are typical if "you're not able to get access to a property." Regardless, the trial court also performed its own inquiry for further clarification regarding the appraisal process and the information Miller gathered to make his assessments. Given the testimony and evidence presented, we find no error in the trial court's reliance on the appraisals Miller produced for each property.

Regarding Miller's fees, the law generally provides that an expert witness is entitled to reasonable compensation for his court appearance and his preparatory work. The trial judge is not required to set an expert witness fee at the amount charged by the expert witness. The trial judge has great discretion in awarding and fixing costs and expert witness fees. *Boone v. Top Dollar Pawn Shop of Bossier, LLC*, 50,493 (La. App. 2 Cir. 2/24/16), 188 So. 3d 1093. A trial court's assessment of costs can be reversed by an appellate court only upon a showing of abuse of discretion. *Ryan v. Case New Holland, Inc.*, 51,062 (La. App. 2 Cir. 12/22/16), 211 So. 3d 611.

In this case, Miller testified that he conducted two appraisals in this matter, and generally charged $750 per appraisal. We find that the trial court was well within its discretion to award fees and have them deducted from the proceeds of the sale. Therefore, this assignment of error is without merit.

11

## CONCLUSION

For the foregoing reasons, the portion of the judgment awarding Braswell damages for one-fifth the amount of rental value for the 413 E. Union property is amended to reflect payments are due retroactively to March 4, 2022, the date of the filing of the petition for licitation where rental damages were sought. All other portions of the judgment are affirmed. Costs of this appeal are assessed to Young.

**JUDGMENT AMENDED IN PART, AND AS AMENDED, AFFIRMED.**